# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 31, 2018

Lyle W. Cayce
Clerk

No. 17-50297

In the Matter of: MANUEL PALOMERA LOPEZ; DOLORES RONQUILLO LOPEZ

      Debtors

--------------------------------------

MARY K. VIEGELAHN,

      Appellee,

v.

MANUEL PALOMERA LOPEZ; DOLORES RONQUILLO LOPEZ,

      Appellants.

Appeal from the United States District Court
for the Western District of Texas

Before KING, ELROD, and GRAVES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

In this Chapter 13 bankruptcy case, debtors sold their Texas homestead and did not use the sale proceeds to purchase another home. The debtors later voluntarily dismissed their bankruptcy case. The bankruptcy court determined that the debtors were entitled to the return of the homestead proceeds because they voluntarily dismissed their case. The district court disagreed, concluding that the proceeds should remain with the trustee for

No. 17-50297

distribution to creditors in the dismissed bankruptcy proceeding. Determining that the bankruptcy court's decision was correct, we REVERSE the judgment of the district court as to the disbursement of the proceeds; AFFIRM the district court's judgment regarding the debtors' motion to dismiss and the trustee's motion to modify; and REINSTATE the order of the bankruptcy court directing the trustee to return the homestead proceeds to the debtors.

I.

In 2009, Manuel Palomera Lopez and Dolores Ronquillo Lopez (hereinafter, the Debtors) filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas. In their petition, the Debtors listed a property in San Antonio as their homestead, which they claimed as exempt under 11 U.S.C. § 522(b)(3), the Texas Constitution, and the Texas Property Code. The Debtors proposed a Chapter 13 plan under which they would pay a monthly plan payment of $1,100 for 60 months. The bankruptcy court confirmed the Debtors' plan. The confirmation order provided in part that:

> All property of the estate, including . . . other property which may become part of the estate during the administration of the case, shall not revest in the Debtor. Such property as may revest in the Debtor shall so revest only upon further Order of the Court or upon dismissal, conversion, or discharge.

In the course of this case, Mary K. Viegelahn, the Standing Chapter 13 Trustee for the Western District of Texas (hereinafter, the Trustee), filed three motions to dismiss. In 2011, the Trustee filed the first motion to dismiss alleging that the Debtors were in arrears with their plan payments, rendering the plan infeasible unless the Debtors cured the arrears or increased the amount of their monthly plan payments. In response, the Debtors filed a motion to modify the plan, stating that they were no longer able to afford the plan payments because Manuel Lopez had been incarcerated for the past ten

2

months and was unable to provide financial assistance. The Debtors also stated that Dolores Lopez "has been working side jobs but her income is insufficient to afford the plan payment." The Debtors proposed to surrender a vehicle to reduce the plan payments and stated that this modification would allow them to successfully complete the plan. The bankruptcy court granted the Debtors' motion to modify and dismissed the Trustee's motion to dismiss as withdrawn. In 2013, the Trustee filed a second motion to dismiss, alleging that the Debtors had failed to make required plan payments and were in arrears. In response, the Debtors filed a motion to modify the plan, which the bankruptcy court granted. In June 2014, the Trustee filed a third motion to dismiss because of continued failure to make plan payments.

In August 2014, the Debtors filed a *nunc pro tunc* motion[1] to sell property, through which they sought permission to sell the property designated in their petition as their homestead. In their motion, the Debtors stated that the homestead property was sold in July 2011 on a wrap-around note with a balloon payment. According to the Debtors, Dolores Lopez needed the proceeds to pay for "mandatory eye surgery." In her amended objections to the Debtors' *nunc pro tunc* motion to sell their homestead, the Trustee questioned why the Debtors did not seek permission from the bankruptcy court to sell their homestead in 2011. The Trustee also emphasized that, under Fifth Circuit precedent in *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384 (5th Cir. 2014), proceeds from the sale of a homestead become property of the estate if not reinvested in another home within six months. Thus, the Trustee maintained that the Debtors could not use the homestead proceeds for eye surgery even if the surgery was mandatory.

---

[1] "*Nunc pro tunc* translates 'now for then.'" *MortgageAmerica Corp. ex rel. Knostman v. Am. Fed. Sav. & Loan (In re MortgageAmerica Corp.)*, 831 F.2d 97, 97 n.1 (5th Cir. 1987) (citing *Fanelli v. Hensley (In re Triangle Chems., Inc.)*, 697 F.2d 1280, 1285 (5th Cir. 1983)).

No. 17-50297

The bankruptcy court approved the Debtors' *nunc pro tunc* motion to sell their homestead. However, the court ordered that the net proceeds from the sale of the homestead—after all claims secured by liens on the property, ad valorem taxes, and closing costs had been satisfied—be submitted to the Trustee. The Trustee then filed a motion to modify the plan, asserting that the net sale proceeds must be disbursed to creditors.

In response to the Trustee's pending third motion to dismiss, the Debtors filed a motion to modify the plan. The Debtors stated that they had fallen behind in their plan payments because Manuel Lopez was no longer in the United States and had been unable to remit money for the plan payment and because Dolores Lopez had been sick and had not been receiving enough income to remit the plan payment. They also stated that Dolores Lopez was scheduled for eye surgery that would cost approximately $20,000. Noting that they were over $4,000 in arrears, the Debtors proposed remitting a lump sum of the net proceeds from the sale of their homestead less Dolores Lopez's medical costs related to her eye surgery.

In December 2014, the bankruptcy court held a hearing on the Trustee's third motion to dismiss the case for failure to make plan payments. At the close of the hearing, the bankruptcy court indicated that it would allow Dolores Lopez to pay her eye surgery bills from the net sale proceeds, stating "and then the rest of it's going to come in. Unless [Dolores Lopez] wants to dismiss the case. *If she wants to dismiss the case, she can keep it all, but then she won't have a discharge. So, that's the trade-off.*" (emphasis added). Later that month, Independence Title Company delivered $42,148.58 from the sale of the homestead to the Trustee. A month later, the Debtors—choosing a solution that the bankruptcy court said was available—filed a motion to voluntarily dismiss their Chapter 13 case.

4

No. 17-50297

The Trustee filed objections to the Debtors' motion to dismiss. In her amended objections, the Trustee asserted that the bankruptcy court should deny the motion in part because the Debtors sought dismissal in bad faith. The only evidence of bad faith that the Trustee alleged was that "[t]he Debtors initially sold property of the estate without court authority[] and did so approximately three . . . years ago," and that the Debtors "now seek to dismiss this case and retain a 'windfall' at the expense of their unpaid creditors." The Trustee also maintained that "cause" existed under 11 U.S.C. § 349(b) to keep the homestead proceeds from returning to the Debtors. Thus, the Trustee requested that the bankruptcy court deny the Debtors' motion to dismiss and grant the Trustee's motion to modify or, if the case was dismissed, find "cause" to order that funds held by the Trustee—*i.e.*, the $42,148.58 in net sale proceeds plus all plan receipts not yet distributed—be disbursed to the Debtors' creditors.

In February 2015, the bankruptcy court held a hearing on the Trustee's motion to dismiss, the Trustee's motion to modify the plan, and the Debtors' motion to dismiss. The court inquired as to why the Debtors had sold their homestead without first obtaining court approval. Counsel for the Debtors responded:

> I don't know, Judge. [Dolores Lopez] basically was told by a realtor or some third party that she could sell it. If you remember, her husband got deported to Mexico. And they were having trouble funding the plan, funding the house payment. And then they decided that a way to solve that problem was to sell the house, get some money.

Counsel for the Debtors also clarified that after Dolores Lopez sold the home, she began receiving payments on the wrap-around note. Those payments were somewhat greater than the payments that she continued to make on the first lien note on the home, allowing her to use the difference for expenses, including

5

plan payments. When the balloon payment became due, it appears that Dolores Lopez stopped receiving payments on the wrap-around note, preventing her from continuing to make plan payments.

The bankruptcy court granted the Debtors' motion to voluntarily dismiss their case. The court stated that "[a]lthough Dolores Ronquillo Lopez sold her homestead without prior approval of the Court, the Court does not find cause for conversion to Chapter 7 or for an involuntary modification of the Chapter 13 Plan." Moreover, the bankruptcy court ordered that the funds from the sale of the homestead be transferred from the Trustee to Dolores Lopez after payment of the Trustee's commission. The bankruptcy court also entered orders dismissing as moot the Trustee's third motion to dismiss and the Trustee's motion to modify.

The Trustee appealed to the district court. The district court determined that the homestead proceeds should be distributed to the creditors under the Chapter 13 plan—even though the plan was now defunct. Moreover, the district court held that, even if the proceeds would ordinarily vest in the Debtors upon dismissal, "cause" existed under 11 U.S.C. § 349(b) to order that the proceeds be distributed to the creditors. The district court then entered an order that: (1) affirmed the bankruptcy court's order dismissing as moot the Trustee's motion to modify the plan; (2) affirmed the portion of the bankruptcy court's order granting the Debtors' motion to dismiss; (3) reversed the portion of the order requiring that the funds held by the Trustee be returned to the Debtors; and (4) remanded the case to the bankruptcy court "to enter an order allowing the trustee to disburse [the homestead proceeds] to the creditors in accordance with this Court's order and the Chapter 13 plan in this case." The Debtors timely appealed.

No. 17-50297

II.

"We review 'the decision of a district court sitting as an appellate court in a bankruptcy case by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court.'" *Endeavor Energy Res., L.P. v. Heritage Consol., L.L.C. (In re Heritage Consol., L.L.C.)*, 765 F.3d 507, 510 (5th Cir. 2014) (quoting *Clinton Growers v. Pilgrim's Pride Corp. (In re Pilgrim's Pride Corp.)*, 706 F.3d 636, 640 (5th Cir. 2013)). "Acting as a 'second review court,'" we review a bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 538 (5th Cir. 2015) (quoting *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 796 (5th Cir. 1997)); *ASARCO, L.L.C. v. Barclays Capital, Inc. (In re ASARCO, L.L.C.)*, 702 F.3d 250, 257 (5th Cir. 2012). Issues of statutory interpretation are reviewed *de novo*. *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 261 (5th Cir. 2009).

III.

A.

As discussed above, in this Chapter 13 bankruptcy case, the Debtors sold their Texas homestead and did not use the sale proceeds to purchase another home. The Debtors later voluntarily dismissed their bankruptcy case. The bankruptcy court determined that the Debtors were entitled to the return of the sale proceeds because they voluntarily dismissed their case, but the district court disagreed. It is undisputed that the homestead proceeds at issue are non-exempt and became part of the bankruptcy estate prior to dismissal because the Debtors did not use the proceeds to purchase another homestead within six

months of the sale.[2]  Thus, what we confront in this case are non-exempt assets held by a trustee.  The key question is whether these assets are to be returned to the Debtors upon the voluntary dismissal of their case.

The Debtors' plain-text statutory argument is straightforward: Dismissal revests property of the estate—here, the homestead proceeds—in "the entity in which such property was vested immediately before the commencement of the case."  11 U.S.C. § 349(b)(3).  The homestead was vested in the Debtors immediately before commencement of the case.  Moreover, the bankruptcy court did not find "cause" under § 349(b) to order that the proceeds be disbursed to someone other than the Debtors.  Therefore, the Debtors argue, the proceeds belong to them following dismissal.

We begin with a few background principles.  Chapter 13 is a "wholly voluntary alternative to Chapter 7, . . . allow[ing] a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period."  *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015); *see* 11 U.S.C. §§ 1306(b), 1322, 1327(b).  "[T]he Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing."  135 S. Ct. at 1835; *see* § 1306(a).  A debtor generally has a right to voluntarily dismiss her case under § 1307(b) at any time, although the bankruptcy court may deny dismissal "for bad-faith conduct or abuse of the bankruptcy process."  *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 649 (5th Cir. 2010); *see* § 1307(b), § 349(b).

---

[2] However, at the time the Debtors sold their homestead—almost three years before this court's decision in *Frost*—it was not clear that the homestead sale proceeds, unlike the homestead, would become part of the bankruptcy estate if not reinvested in another homestead within six months of the sale.

No. 17-50297

In light of these background principles, we turn to the text of the relevant statute, § 349(b)(3) of the Bankruptcy Code. *See Nowlin*, 576 F.3d at 261 ("When interpreting a statute, we begin by examining its language."). Section 349(b) states that:

> Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title . . .
>
> > (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b)(3). The Bankruptcy Code does not define the terms "vest" or "revest." *See* 11 U.S.C. § 101. "When terms used in a statute are undefined, we give them their ordinary meaning." *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010) (quoting *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)). Black's Law Dictionary defines "vest" to mean, in relevant part: "[t]o confer ownership (of property) on a person"; "[t]o invest (a person) with the full title to property"; or "[t]o give (a person) an immediate, fixed right of present or future enjoyment." VEST, Black's Law Dictionary (Bryan A. Garner ed., 10th ed. 2014). To "revest" means "[t]o clothe or vest again or anew, as with rank, authority, or ownership." REVEST, Black's Law Dictionary. Thus, the ordinary meanings of both "vest" and "revest" are broad. The homestead property was undoubtedly "vested" in the Debtors at the commencement of the bankruptcy case, and a key component of the Debtors' property right in the homestead was the right to sell that same property. *See* 73 C.J.S. Property § 47 (2017) ("The right to sell or otherwise dispose of property is an incident to the right of ownership."). Because the Debtors' right to the sale proceeds was inherent in their right to the homestead property, the proceeds were "vested"

No. 17-50297

in the Debtors at the commencement of the bankruptcy case for the purpose of § 349(b)(3).[3]

Both text and precedent support this conclusion. Holding that homestead proceeds that debtors acquire post-petition generally revest in them upon voluntary dismissal best comports with § 349(b)(3)'s textual directive to return to debtors "the property of the estate" following dismissal.[4] "A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 63 (2012).[5]

---

[3] *Frost* does not undermine this conclusion. *Frost* does not concern the distribution of homestead proceeds upon voluntary dismissal, and its distinction between homestead and proceeds bears on the Texas exemption question, not on rights of ownership or vesting of property. *See generally* 744 F.3d 384; *cf. Hawk v. Engelhart (In re Hawk)*, 871 F.3d 287, 294 (5th Cir. 2017) ("In light of the Supreme Court's decision in [*Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992)], it is somewhat difficult to understand how proceeds from the sale of the homestead in *Frost* could be brought into the bankruptcy estate 'at a time when the homestead had already been declared exempt from the estate.'" (quoting *Frost*, 744 F.3d at 387)) (distinguishing *Frost* and holding in a Chapter 7 case that funds in an individual retirement account did not lose their exempt status even though Texas law provided that proceeds distributed from exempt retirement accounts remain exempt only if reinvested in other accounts within sixty days).

[4] *Compare* § 1306(a)(1) ("Property of the estate includes . . . all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case . . . ."), *with* § 1327(b) ("Except as otherwise provided . . . , the confirmation of a plan vests all of the property of the estate in the debtor."). As noted above, the order confirming the Debtors' plan provides that property of the estate that "may revest in the Debtor shall so revest only upon further Order of the Court or upon dismissal, conversion, or discharge."

[5] Indeed, under the whole-text canon, we ought to "consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Scalia & Garner, Reading Law, at 167. "Context is a primary determinant of meaning" and "[t]he entirety of the document . . . provides the context for each of its parts." *Id.* Given the Bankruptcy Code's provisions indicating that estate property that had been acquired by debtors post-petition generally vests in them and the fact that § 349 alone governs the legal effect of dismissal on a Chapter 13 case, § 349(b)(3) must govern the disposition of all estate property upon voluntary dismissal under Chapter 13. Interpreting § 349(b)(3) in any other way leads to an absurd result that is unnecessary under the plain language of the statute and unsupported by the Bankruptcy Code as a whole: property acquired by a debtor that vests in no one and can go nowhere upon voluntary dismissal.

No. 17-50297

Under our precedent, § 349(b)'s purpose is clear: to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *Wells Fargo Bank v. Oparaji (In re Oparaji)*, 698 F.3d 231, 238 (5th Cir. 2012) (quoting *In re Sanitate*, 415 B.R. 98, 105 (Bankr. E.D. Pa. 2009)) (determining that because dismissal of a bankruptcy case restores the status quo, the parties were no longer bound by the terms of the Chapter 13 plan). Indeed, the bankruptcy estate ceases to exist upon dismissal. *See SEC v. Great White Marine & Recreation, Inc.*, 428 F.3d 553, 556 (5th Cir. 2005) ("An estate is a separate legal identity, created on (and by) the filing of a bankruptcy petition, and continuing until confirmation, conversion, or dismissal of the case." (quoting *In re Herberman*, 122 B.R. 273, 278 (Bankr. W.D. Tex. 1990))). Before the Debtors in this case initiated their Chapter 13 bankruptcy proceeding, they owned a homestead. Restoring the status quo requires returning to the Debtors the proceeds from the sale of that asset. *See Oparaji*, 698 F.3d at 238.[6] That is what the bankruptcy court did.[7]

In addition, a trustee lacks any inherent authority to distribute property to creditors upon dismissal. Simply put, a trustee has authority to distribute funds only pursuant to the express terms of a plan. *See* § 1326(a)(2); 8 Collier

---

[6] *See also First Nat'l Bank of Oneida v. Brandt*, 887 F.3d 1255, 1261 (11th Cir. 2018) (stating that "insofar as the dismissal of a bankruptcy case is concerned, the aim of § 349(b) is to return the parties, as far as practicable, to the financial positions they occupied before the case was filed").

[7] The Trustee argues that the "basic bargain" of Chapter 13 requires distributing the homestead proceeds to creditors. Simply put, the Trustee fails to appreciate the nature of the Chapter 13 bargain. As the Supreme Court has stated, Chapter 13 proceedings "can benefit debtors and creditors alike." *Harris*, 135 S. Ct. at 1835. Moreover, the creditors here still may pursue any viable state-court remedies against the Debtors. *See In re Slaughter*, 141 B.R. 661, 664 (Bankr. N.D. Ill. 1992) ("If the debtors had never filed Chapter 13, they would be entitled to possession of their [post-petition] wages in full, subject to whatever rights their creditors have to reach part of those wages in satisfaction of their claims under applicable nonbankruptcy law and procedure.").

11

on Bankruptcy ¶ 1307.09 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018) ("[U]pon dismissal of a chapter 13 case, the trustee has a duty to return to the debtor all property of the debtor held by him or her at the time of the dismissal and to take no further steps to implement the chapter 13 plan."); *see also Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1413 (9th Cir. 1985) (determining that the dismissal of a confirmed Chapter 13 plan "effectively vacated" the plan), *superseded by statute on other grounds*.[8]  Thus, not only does the district court's interpretation of § 349(b)(3)—that the proceeds vested in no one and therefore may go to creditors—conflict with other provisions of the Bankruptcy Code, but in making this determination, the district court created an untenable situation: a trustee distributing funds to creditors pursuant to a Chapter 13 plan when that plan itself is defunct and the case is over.   Therefore, we hold that under § 349(b)(3) of the Bankruptcy Code, proceeds from the post-petition sale of a debtor's exempt homestead generally must be returned to the debtor upon voluntary dismissal.[9]

---

[8] Counsel for the Trustee conceded at oral argument that she could cite to no case that allows a trustee, in the absence of an operative plan, to distribute funds to creditors.

[9] It would strain these principles and our caselaw to hold otherwise.  *Cf. Lowe v. DeBerry (In re DeBerry)*, 884 F.3d 526, 529–30 (5th Cir. 2018) (holding that proceeds from the post-petition sale of a pre-petition homestead in a Chapter 7 case remain exempt from the debtor's estate even if they are not reinvested in another homestead within six months and stating that "Texas's homestead exemption . . . has much deeper roots than the protections afforded retirement accounts" (citing *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 316 (5th Cir. 2003) ("Homesteads are favorites of the law, and are liberally construed by Texas courts."))).

Moreover, the Supreme Court recently considered a related issue in *Harris v. Viegelahn*, holding that post-petition wages held by a Chapter 13 trustee at the time of conversion to Chapter 7 must be returned to the debtor, not distributed to creditors upon conversion.  135 S. Ct. at 1834–35. (*Harris v. Viegelahn* involved the same trustee as in this case; in *Harris*, the Supreme Court reversed this court's decision that had held in favor of the Trustee.  *See id.* at 1836, 1840.)  While not dispositive of the issue before us today because of the distinctions between Chapter 13 and Chapter 7 and between conversion and dismissal, we find the Court's analysis instructive.  The Court in *Harris* firmly rejected "the suggestion that a confirmed Chapter 13 plan gives creditors a vested right to funds held by a trustee." *Id.* at 1839.  This is because "estate property does not become property of creditors until it is

No. 17-50297

Cogent reasoning from a number of courts also supports our holding. *See In re Edwards*, 538 B.R. 536, 539–40 (Bankr. S.D. Ill. 2015) (collecting cases and stating that "[a] majority of courts . . . hold that [funds held by the trustee when a confirmed Chapter 13 case is dismissed] must be returned to the debtor"); *Nash*, 765 F.2d at 1414 (determining that post-petition wages received by the trustee before dismissal must be remitted to the debtors rather than distributed to the creditor upon dismissal of the Chapter 13 case); *In re Slaughter*, 141 B.R. 661, 663 (Bankr. N.D. Ill. 1992) ("It would be anomalous to give prepetition property of the estate to the debtor under § 349(b)(3) and postpetition property of the estate to creditors.").[10]   Therefore, § 349(b)(3) generally requires a trustee to return to debtors the proceeds from the post-petition sale of their exempt homestead upon the voluntary dismissal of their Chapter 13 case.   Simply put, as counsel for the Trustee admitted at oral argument, this bankruptcy case is over.  There is no Chapter 13 trustee.  There are no *bankruptcy* creditors—only creditors.

B.

Under the clear-error standard that we apply to a bankruptcy court's findings of fact, we will reverse only if, "on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." *Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 152 (5th Cir. 2015) (quoting *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d

---

distributed to them."   *Id.*; *see also* 11 U.S.C. § 1306(b).   Indeed, "[n]o provision in the Bankruptcy Code classifies any property . . . as belonging to creditors."   135 S. Ct. at 1839 (quoting *In re Michael*, 699 F.3d 305, 312–13 (3d Cir. 2012)).

[10] The Trustee contends that *Slaughter* and analogous cases do not address whether there was "cause" to order that post-petition property be distributed to creditors.  This is beside the point.  "Cause" is a separate question.  Section 349(b) provides that the bankruptcy court may find "cause" to prevent the return of estate property to a debtor.  That does not undermine the conclusion that § 349(b)(3) requires returning post-petition property to the debtor upon dismissal *unless* such cause is found.

473, 480 (5th Cir. 2009)). "Although we may 'benefit from the district court's analysis of the issues presented, the amount of persuasive weight, if any, to be accorded the district court's conclusions is entirely subject to our discretion.'" *Age Ref., Inc.*, 801 F.3d at 538 (quoting *Zer-Ilan v. Frankford (In re CPDC, Inc.)*, 337 F.3d 436, 441 (5th Cir. 2003)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Jacobsen*, 609 F.3d at 662 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). In upholding a bankruptcy court's finding of bad faith in the context of 11 U.S.C. § 1307, we have stated that "the bankruptcy court, sitting as the factfinder, ha[s] the ability to evaluate [the debtor's] testimony and his credibility firsthand." *Id.*

As discussed above, § 349(b) states that property of the estate revests upon dismissal "[u]nless the court, for cause, orders otherwise."[11] "[R]ead in context, [§ 349(b)] appears designed to give courts the flexibility to 'make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 984 (2017) (quoting H.R. Rep. No. 95-595, at 338) (holding that a bankruptcy court lacks the authority, absent the consent of affected parties, to order a distribution scheme related to a Chapter 11 dismissal that skips the Bankruptcy Code's "basic priority rules" for "final distributions of estate value in business bankruptcies"). The Bankruptcy Code does not appear to define what constitutes "cause" under § 349(b). *In re Darden*, 474 B.R. 1, 12 (Bankr. D. Mass. 2012). The Trustee argues that the Debtors acted in bad faith, engaged in dishonesty, and abused the bankruptcy process. We need not decide whether a finding of "cause" under § 349(b) must be based on evidence of bad

---

[11] Moreover, we have held that a debtor's right to voluntarily dismiss her case under § 1307(b) is not absolute but is "subject to a limited exception for bad-faith conduct or abuse of the bankruptcy process." *Jacobsen*, 609 F.3d at 649.

faith or whether other considerations may also justify such a finding. This is because, considering the record, we are not "left with the definite and firm conviction" that the bankruptcy court erred in determining that there was no "cause" to order that the homestead proceeds be kept from the Debtors.[12] *See Am. Hous. Found.*, 785 F.3d at 152. Indeed, this determination was not error—clear or otherwise.

Here, when the Debtors fell behind in plan payments, they proposed to surrender a vehicle in the hopes that this modification would allow them to successfully complete the plan. Later, the Debtors proposed remitting a lump sum of the net proceeds from the sale of their homestead (less Dolores Lopez's medical costs related to her eye surgery) to help reduce the amount they owed in arrears. Rather than abusing the bankruptcy process, the Debtors apparently made payments under their plan for at least four years. They filed a motion to dismiss only after the bankruptcy court clearly stated that Dolores Lopez could voluntarily dismiss the case and receive all of the homestead proceeds as an alternative to discharge. Moreover, counsel for the Debtors represented that Dolores Lopez had been using payments received on the wrap-around note from the sale of the homestead to make plan payments, thus benefitting creditors. It appears that she stopped making plan payments only when she was no longer receiving payments on the wrap-around note. These considerations undermine the idea that the Debtors acted in bad faith or abused the bankruptcy process and undercut the Trustee's assertion that creditors would suffer inequity unless the Trustee distributes the homestead proceeds to them.

---

[12] While the Trustee faults the bankruptcy court for allegedly taking no evidence at the bankruptcy hearings, this argument saws the branch on which it sits. The argument that no evidence was taken undermines the assertion that evidence of "cause" existed at all.

No. 17-50297

In addition, the Debtors' exempt homestead (sold in 2011) was not property of the estate[13] and, prior to this court's 2014 decision in *Frost*, the Debtors would not have been on notice that the homestead sale proceeds, unlike the homestead, would become part of the estate if not reinvested in another homestead within six months of the sale.   This undermines the assertion that "cause" exists because the Debtors did not disclose the existence of the homestead proceeds when those proceeds first became part of the bankruptcy estate.   Thus, on this record, the bankruptcy court did not err in determining that "cause" did not exist to keep the homestead proceeds from returning to the Debtors.

IV.

Therefore, because the homestead proceeds vested in the Debtors upon dismissal of their Chapter 13 case and because the bankruptcy court did not err in finding no "cause" to order otherwise, the Trustee must return the homestead proceeds to the Debtors.   Accordingly, we REVERSE the judgment of the district court as to the disbursement of the proceeds; AFFIRM the district court's judgment regarding the Debtors' motion to dismiss and the Trustee's motion to modify; and REINSTATE the order of the bankruptcy court directing the Trustee to return the homestead proceeds to the Debtors.

---

[13] "Under Texas law, a debtor's homestead is permanently exempted from the bankruptcy estate . . . ." *Frost*, 744 F.3d at 385.

16