Guy R. Humphrey, United States Bankruptcy Judge
I. INTRODUCTION
This matter was before the court on the Chapter 13 trustee's motions to dismiss six *12 different post-confirmation Chapter 13 cases (the "Motions").[1] The Motions were unopposed, but were noticed for hearing by the court to address how the Chapter 13 Trustee is required to distribute funds which the Trustee holds at the time a dismissal order is entered. At the conclusion of the hearing, the court granted the Motions to dismiss, but ordered that all funds held by the Trustee be distributed to the debtors in each of their respective cases, and denied any other relief sought in the Motions. The court entered orders consistent with its oral decision. The court is issuing this written decision to further explain the court's rationale.
II. FACTS AND PROCEDURAL BACKGROUND
Pursuant to a prior order entered in each of the six cases, the court conducted a hearing on the Motions on June 6, 2019, attended by Jeffrey M. Kellner, the Chapter 13 Trustee; Scott G. Stout, counsel for the Chapter 13 Trustee; Rebecca Barthelemy-Smith, counsel to Delores Elms and Chris Miller; Kenneth J. Krochmal, counsel to Steven Rose; Stephen J. Malkiewicz, counsel to Andrew Clang; Erin C. Renneker, on behalf of Amicus Curiae Harold Jarnicki & Associates; Andrew Zeigler and John Frederick Kennel, on behalf of Amicus Curiae, Kennel Zeigler LLC; and attorney Brian Flick.[2]
The Motions, with the exception of the specific dollar amount which the Trustee was holding in each debtor's case, provided that:
The Trustee states that he has approximately $[ ] on hand, which may change based on monies received and/or disbursements made in the administration of the case and pursuant to the Chapter 13 plan and the Confirmation Order. The Trustee intends to disburse until a filed order of dismissal is signed and docketed with the Court. Any remaining funds on hand at the time of the dismissal as a result of Debtor payments shall be refunded to the Debtor except to disburse for any signed order allowing Administrative Claims such as attorney fees. Further, any funds held by the Trustee from other sources, including but not exclusive of, insurance proceeds, personal injury awards, worker's compensation, buyouts, severance packages, lottery winnings or inheritance, shall be disbursed pursuant to the Plan and/or any applicable non-bankruptcy law.
The Trustee was holding $4,961.21 in the Elms case; $31.88 in the Mitchell case; $36.51 in the Clang case; $1,803.66 in the Rose case; $30.00 in the Miller case; and $30.00 in the Brock case. The above-quoted language in the Trustee's Motions was the result of a prior order of the court which provided that:
In the future, in order for the court to appropriately adjudicate post-confirmation motions to dismiss filed in Chapter 13 cases, and for all parties to be made aware of funds being held by the Trustee and the intended disposition of any such funds, the court will require each post-confirmation motion to dismiss filed by the Chapter 13 Trustee to state: a) whether the Trustee is holding funds; b)
*13 if the Trustee is holding funds, the amount of the funds which the Trustee is holding; and c) how the Trustee intends to dispose of the funds being held.
In re Taylor , Case No. 18-30211 (doc. 54) (emphasis omitted).
In its orders scheduling the hearing on the Motions the court provided that:
Upon review, the court has decided that a hearing is necessary to determine proper distribution of funds held by the Trustee at the time of dismissal or reconversion of a case to Chapter 7. At the time of the hearing, the court will address the following issues:
1. Is distribution of funds on hand to pay administrative claims, including attorney fees, permissible without the court ordering otherwise for cause under 11 U.S.C. § 349(b) ?
2. What is the legal basis for the exception for funds originating from "other sources"?
See, e.g. In re Elms , 15-31489 (doc. 54).
The Trustee filed a legal memorandum (the "Memorandum") supporting his Motions arguing that upon dismissal the Trustee was obligated to distribute any funds on hand to creditors pursuant to the confirmed Chapter 13 plan. See 11 U.S.C. § 1326(a)(2) and (c).[3] Counsel for Andrew Clang filed a brief in support of the Trustee's position. In re Clang , Case No. 17-31296 (doc. 30). Amicus Curiae Jarnicki & Associates and Kennel Ziegler LLC also filed memoranda supporting the Trustee's position and making additional arguments in favor of distributing funds held by the Chapter 13 Trustee pursuant to the confirmed plan. See In re Elms , Case No. 15-31489 (docs. 62 and 63).
III. POSITIONS OF THE PARTIES
The Trustee, counsel for Clang, and the Amicus Curiae assert that the Trustee has a duty to distribute funds which he is holding following a post-confirmation dismissal in accordance with the confirmed plan pursuant to § 1326(a)(2) and (c). No counsel or parties argued otherwise. The primary concern raised by the Trustee and legal counsel was the payment to debtors' attorneys on approved, but un-paid attorney fee applications. Because attorney fees and expenses are accorded administrative expense priority status over creditors, any funds held by the Trustee first would be distributed to attorneys for un-paid fees and expenses.[4]
IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW
The court ordered that the cases be dismissed and that the funds held by the Chapter 13 Trustee be distributed to the debtors in each of their respective cases. As the court noted in its oral decision, while the court respects the professional and diligent work performed by legal counsel in Chapter 13 cases and favors counsel being paid reasonable and just compensation for that work, absent circumstances authorizing the court to "order[s] otherwise" pursuant to § 349(b), the court finds that the law requires that the Trustee distribute to the debtors funds he is holding at the time of dismissal.[5]
*14 Distribution of funds in post-confirmation dismissals in Chapter 13 has received great attention following the Supreme Court's decision in Harris v. Viegelahn , --- U.S. ----, 135 S. Ct. 1829, 191 L.Ed.2d 783 (2015).[6] In Harris the Court determined that funds held by a Chapter 13 trustee upon the conversion of a Chapter 13 case to Chapter 7 must be distributed to the debtor. The Court held that "[t]he moment a case is converted from Chapter 13 to Chapter 7, however, the Chapter 13 trustee is stripped of authority to [disburse payments to creditors]." Harris , 135 S. Ct. at 1838. The Court also indicated that upon conversion of a Chapter 13 case to Chapter 7, the Chapter 13 plan is "defunct." Id. at 1839.
The trustee in Harris , following conversion of the case, distributed post-petition wages she was holding pursuant to the debtor's confirmed Chapter 13 plan. See 11 U.S.C. § 1306 (property of the estate in Chapter 13 includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted ... whichever occurs first."). Some of the funds went to unsecured creditors, and $1,200 went to the debtor's counsel for unpaid attorney fees. Harris , 135 S. Ct. at 1836. The debtor moved that the unsecured creditors return the funds paid to them, arguing the trustee acted outside her statutory authority. Id. The Court held that those funds must be returned to the debtor. Id. The Court noted under § 348(f)(1)(A) those funds did not belong to the Chapter 7 estate.[7] Id. The Court found that allowing the trustee "to disburse the very same earnings to the very same creditors is incompatible with that statutory design." Id. at 1837. The Court explained that § 348(e) terminates the services of the trustee, and. that "[a] core service provided by a Chapter 13 trustee is the disbursement of 'payments to creditors ' " and further, upon conversion, the plan was no longer binding under § 1327. Id. at 1838 ; see also 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor ...."). The Court found that returning funds to the debtor was not a trustee "service" barred by § 348(e). Harris , 135 S. Ct. at 1838.
The Trustee, legal counsel, and the Amicus Curiae argued in these cases that the statutory structure for dismissal is different than conversion and the rationale of Harris should not be applied to post-confirmation dismissals. They first emphasize the language of § 1326(a)(2) and (c). These provisions instruct Chapter 13 trustees that once a plan is confirmed, they are to distribute the funds collected from the debtors "in accordance with the plan as soon as is practicable", "[e]xcept as otherwise provided in the plan or in the order confirming the plan ...." 11 U.S.C. § 1326(a)(2) and (c). They further argue that while § 348(e) expressly terminates the services of a trustee upon conversion of a case to another chapter of the Code, § 349 concerning dismissal of a case has no such provision terminating the services of a trustee. Therefore, since § 349 has no such provision terminating the services of *15 a trustee upon dismissal, the implication is that Congress intended Chapter 13 trustees to continue with their duties upon dismissal, including distributing funds on hand pursuant to the confirmed plan. Further, they argue that § 349(b)(3) provides that upon dismissal, property of the estate revests in the entity which held it at the time the case was filed. They note that it is impossible to "return" or "revest" the funds which came to the Trustee from the debtors' earnings to the entity which held that property when the case was filed because such wages did not exist when the case was filed.[8] The same argument exists for any other income received by debtors post-petition, such as income derived from post-petition personal injury or workers compensation recoveries, and social security disability awards. They argue that because Congress did not provide for payment of proceeds from the wages or post-petition recoveries to the debtors following dismissal, Congress must have intended that the Trustee distribute such funds to the creditors pursuant to the confirmed plan. Further, they argue that since Congress expressly provided under § 1326(a)(2) for return of funds to the debtors upon dismissal of a case prior to confirmation and did not so provide for distribution of funds upon dismissal following confirmation of the plan, Congress again must have intended that such funds be distributed to legal counsel and the creditors pursuant to the confirmed Chapter 13 plan.[9] They also argued that it would be incongruous for Congress to provide for counsel to get paid when a case is dismissed prior to confirmation of a plan, but to not intend for counsel to get paid when a case is dismissed following confirmation of a plan.[10]
Despite the arguments of the Trustee, counsel for Clang, and the Amicus Curiae, the court finds that the distinction between conversion of a case to Chapter 7, as was involved in Harris , and dismissal of a case does not warrant a different conclusion as to the disposition of the funds held by the Trustee. First, the Supreme Court was quite clear in Harris that the Chapter 13 plan ceased upon conversion, and the Chapter 13 trustee was statutorily required to return to the debtor any funds which the trustee was holding at the time *16 of conversion. The trustee's limited role upon conversion stemmed not from the language of the Chapter 13 plan but from the requirements of the Bankruptcy Code itself. The distinction between conversion to Chapter 7 as opposed to dismissal of the Chapter 13 case does not change this consequence. There is no reason to conclude that a Chapter 13 plan is defunct after conversion, but survives after dismissal. As stated by the court in In re Bateson , "the effect of a Chapter 13 confirmation order is no greater in a dismissed Chapter 13 case than it would be in a converted Chapter 13 case. In either instance, the Chapter 13 case is over." 551 B.R. 807, 812 (Bankr. E.D. Mich. 2016).
The effect of dismissal of a case generally is to unwind all that occurred during the case and to return the parties to their status as of the time the case was filed. It is hornbook law that § 349, describing the effect of dismissal of a bankruptcy case, seeks, "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." Wcislak v. N. Ohio Inv. Co. (In re Wcislak ), 446 B.R. 827, 829 (Bankr. N.D. Ohio 2011) (internal quotation marks omitted) (quoting Arkison v. Plata (In re Plata ), 958 F.2d 918, 923 (9th Cir. 1992) ); see also In re Hamilton , 493 B.R. 31, 38 (Bankr. M.D. Tenn. 2013) ; Charles Jordan Tabb, Law of Bankruptcy 212 (4th ed. 2016). Returning any funds to the debtors paid to the Trustee from the debtors' earnings, personal injury claims, or other income most closely serves to restore the parties to the positions they held at the time the case was filed.[11]
In Hamilton , the court rejected the argument that funds held by a Chapter 13 trustee upon post-confirmation dismissal of the case should be distributed to creditors because such funds did not exist "immediately before the commencement of the case", as described by § 349(b)(3). 493 B.R. at 40. The court rebuffed that argument stating that "Congress trumped this notion decades ago" when it made post-petition earnings property of the estate under § 1306(a)(2). id. The debtors' plans are consistent with the Hamilton court's notion that by making post-petition wages property of the estate, Congress intended for return of those funds to the debtors upon dismissal.
The court is also not persuaded by the fact that § 348 contains an express provision terminating the services of a trustee upon conversion, while § 349 does not contain such a provision relating to dismissal. Such a provision terminating services of a trustee upon dismissal is unnecessary because dismissal terminates all functions related to a case, with very limited exceptions.[12] On the other hand, a *17 bankruptcy case continues upon conversion under a different chapter of the Code, making it appropriate to demarcate when the services of a trustee terminates in such a case. No such demarcation is necessary when the case is dismissed.[13]
Further, the Trustee cannot make distributions pursuant to the plan after dismissal from funds received from third-party recoveries and sources, such as personal injury recoveries, worker compensation awards, and social security awards. In these six cases the Trustee sought to distribute such recoveries to legal counsel and the creditors pursuant to the plan following dismissal of the case. The Trustee provided no authority for distinguishing between wages, and funds received from litigation claims, settlements, and other similar sources. The only explanation that the Trustee gave was when the Trustee is serving as an intermediary between the debtor, an insurance company, and a creditor secured by a motor vehicle under circumstances in which the vehicle was totaled in an accident and the Trustee is holding insurance proceeds as collateral of the creditor in lieu of the creditor's lien on the title to the vehicle. In that situation, the funds are collateral of the creditor and would not be distributed under the plan except to the secured creditor on account of its lien. That scenario does not justify the Trustee holding funds derived from personal injury or other claims of the debtor. If the funds are insurance proceeds which constitute the collateral of a secured creditor, those funds were never vested in the debtor, are not the debtor's property, and would be distributed to the secured creditor and not the debtor. Distributing those funds to the secured creditor would most closely place the debtor and creditor in the position they were in when the case was filed.
Distributing the funds to the debtors is also consistent with the premise that participation in a Chapter 13 proceeding is voluntary. With very limited exceptions that some courts recognize for bad faith, a Chapter 13 debtor may voluntarily dismiss the case or convert it to a Chapter 7 case at any time. See 11 U.S.C. § 1307(a) and (b) ; In re Ross , 858 F.3d 779, 784 (3d Cir. 2017) (discussing split in the case law about whether debtor's right to dismiss is absolute, or whether the court can consider a competing motion of a creditor to dismiss or convert a bad faith debtor). Execution of the Chapter 13 plan through post-dismissal distributions to creditors interferes with the debtors' right to dismiss a case at any time because it excepts funds held by the Trustee.[14]
This decision is consistent with both pre- Harris and post- Harris case authority on the issue. Two circuit courts of appeals have ruled on the issue-one pre- Harris and one post- Harris . In 1985 the Ninth Circuit held that funds held by a Chapter 13 trustee must be distributed to the debtors *18 at the time of a post-confirmation dismissal. Nash , 765 F.2d at 1413 ("We have previously stated that § 349 'obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy.' ") (quoting Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc. ), 699 F.2d 963, 965 (9th Cir. 1982) (per curiam)). In a recent case originating from the same court and trustee as Harris , the Fifth Circuit similarly held that funds that a trustee is holding at time of a post-confirmation dismissal must be distributed to the debtors absent "cause" shown for ordering otherwise under § 349(b). Viegelahn v. Lopez (In re Lopez ), 897 F.3d 663, 670-71 (5th Cir. 2018) ("[A] trustee lacks any inherent authority to distribute property to creditors upon dismissal. Simply put, a trustee has authority to distribute funds only pursuant to the express terms of a plan.... '[U]pon dismissal of a chapter 13 case, the trustee has a duty to return to the debtor all property of the debtor held by him or her at the time of the dismissal and to take no further steps to implement the chapter 13 plan.' ") (citations omitted). In addition, the bankruptcy courts which have opined on the issue following Harris have applied the rationale of Harris to find that funds on hand with a Chapter 13 trustee at the time of a post-confirmation dismissal should be distributed to the debtors absent "cause" under § 349(b) for ordering otherwise. See Bateson , 551 B.R. 807, 814 ; In re Gonzales , 578 B.R. 627 (Bankr. W.D. Mich. 2017) ; and In re Demery , 570 B.R. 220, 225 (Bankr. W.D. La. 2017).
Finally, no party has argued that this court should "for cause, order[ ] otherwise" under § 349(b) as to the distribution of the funds to the debtors. Nor is the court aware of any facts in these cases which would constitute cause for ordering that the funds be distributed to any party other than the debtors. As the courts have recognized, the Bankruptcy Code does not define what constitutes "cause" under § 349(b) to order the funds on hand be paid to someone other than the debtors. Viegelahn v. Lopez , 897 F.3d at 672. Some courts have held that this exception is intended "to give courts the flexibility to 'make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.' " Id. (quoting Czyzewski v. Jevic Holding Corp. , --- U.S. ----, 137 S. Ct. 973, 984, 197 L. Ed. 2d 398 (2017). Other courts have stated that the facts justifying such an order have generally involved "gamesmanship or bad faith." See Bateson , 551 B.R. at 814 ; and Viegelahn v. Lopez , 570 B.R. 51, 63 (W.D. Tex. 2017), vacated in part , 897 F.3d 663. In another case a bankruptcy court held that "cause" existed under § 349(b) to distribute funds to the debtor's legal counsel at the time of dismissal when the debtor's fee agreement with that counsel provided that "I/We agree that in the event my/our case is dismissed at any time after the Meeting of Creditors, that [the law firm] shall have the right to recover all funds in the hands of the Chapter 13 Trustee that would otherwise be refunded, up to the total fees then due for this case." In re Beaird , 578 B.R. 643, 650 (Bankr. D. Kan. 2017). See also In re Lewis , 346 B.R. 89, 105 (Bankr. E.D. Pa. 2006) ("[I]f a request for the allowance of an administrative expense is pending at the time of dismissal of a Chapter 13 case, the asserted entitlement ordinarily will constitute 'cause' for the entry of an order modifying the presumptive revesting of estate property under § 349(b)(3)."). However, this court need not opine on what constitutes "cause" for ordering otherwise under § 349(b). The court will address any case in which "cause" for varying from the general rule of distribution *19 to the debtors is raised, considering the unique circumstances of each case.
V. CONCLUSION
Accordingly, for the foregoing reasons, the Trustee's Motions were granted only to the extent that the Motions requested dismissal and were denied in all other respects, with all funds the Trustee was holding ordered distributed to the debtors.

In re Elms (Case No. 15-31489); In re Mitchell (Case No. 17-30046); In re Clang (Case No. 17-31296); In re Rose (Case No. 17-31917); In re Miller (Case No. 17-33693); and In re Brock (Case No. 18-30569). This decision has no impact on the distribution of funds in cases dismissed prior to confirmation.

The Order scheduling the hearing also scheduled a Motion to Dismiss in In re Hoefer , Case No. 15-33197, and Motion to Convert in In re Hines , Case No. 17-31829; however, those motions were resolved prior to the scheduled hearing.

Any reference to the "Code" or any reference to a "§" of a statute shall be to the Bankruptcy Code of 1978, as amended, 11 U.S.C. § 101 -1532, unless otherwise noted.

Attorneys providing legal services to Chapter 13 debtors have priority status with respect to attorney fees and expenses owed to them relating to representation of the debtors in their Chapter 13 cases. 11 U.S.C. §§ 330(a), 503(b)(2), 507(a)(2), and 1322(a)(2). The only exception would be unsecured domestic support obligations. 11 U.S.C. § 507(a)(1).

The court also recognizes and appreciates that representation of bankruptcy debtors entails financial risk, with counsel often not being paid all of the fees they are owed.

Cases discussing this issue are collected in Dina Lancer, What Does Bankruptcy Code Require Chapter 13 Trustee to Do with Undistributed Funds Received Pursuant to Confirmed Chapter 13 Plan When Chapter 13 Case is Dismissed . 20 A.L.R. Fed. 3d Art. 3 (2017).

11 U.S.C. § 348(f)(1)(A) provides that in a Chapter 13 case converted to another chapter, except for a bad faith conversion, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion ...."

Code § 349(b) provides in pertinent part:
Unless the court, for cause, orders otherwise, a dismissal of a case ...
(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.
11 U.S.C. § 349(b).

Code § 1326 states, in pertinent part:
(a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount-
(A) proposed by the plan to the trustee;
* * *
(2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).
* * *
(c) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.
11 U.S.C. § 1326.

In a pre-confirmation dismissal, § 1326(a)(2) allows payment to administrative expense claimants before distributing the balance of funds on hand to the debtor. However, there is no comparable provision allowing distribution to administrative claimants, such as debtors' counsel, when the case is dismissed post-confirmation.

Courts have consistently held that creditors do not obtain a vested right in funds held by a Chapter 13 trustee. "Though creditors have a right to those payments based on the confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors." In re Michael , 699 F.3d 305, 313 (3rd Cir. 2012) ; see also In re Plata , 958 F.2d at 922 ("A Chapter 13 creditor's interests do not vest until the monies are distributed.") (internal quotation marks omitted) (quoting Resendez v. Lindquist , 691 F.2d 397, 400 (8th Cir. 1982) (Bright, J., dissenting)); Bateson , 551 B.R. at 812-13.

For instance, after dismissal of a case, a bankruptcy court still has authority to sanction entities for violation of the Bankruptcy Code and Bankruptcy Rules. See Spradlin v. Richard , 572 Fed. App'x 420, 427-28 (6th Cir. 2014) ; Y.J. Sons & Co. v. Anemone, Inc. (In re Y.J. Sons & Co. ), 212 B.R. 793, 807 (D. N.J. 1997) ; and Glannon v. Carpenter (In re Glannon ), 245 B.R. 882, 887 (D. Kan. 2000).

Of course, the Trustee still must perform some ministerial functions following dismissal of a case, such as filing a final report. See Nash v. Kester (In re Nash ), 765 F.2d 1410, 1413 (9th Cir. 1985) ("The Trustee's duties did not end when the Chapter 13 case was dismissed. The Trustee was required to make a final report regarding the administration of the estate, 11 U.S.C. §§ 704(8) & 1302(b)(1), and he was not discharged until the bankruptcy court approved the final report and closed the case .... See 11 U.S.C. § 350.").

The Trustee, counsel for Clang, and the Amicus Curiae did not provide any legal basis for distinguishing between voluntary dismissals initiated by debtors under § 1307(b) and motions to dismiss filed by trustees under § 1307(c). They concluded that under both circumstances the Trustee should distribute any funds on hand to counsel and the creditors following a post-confirmation dismissal.