BANKS, Justice,
for the court:
This case requires that we construe a provision in. the Truth-in-Lending Act[1] exempting loans made for “initial construction” from the notice requirement of three-day right to rescind. We conclude that the circuit court properly construed the statute, but that, as to one of the two loans in question, it erroneously applied the statute so construed. Accordingly, we affirm in part and reverse in part the summary judgment rendered in favor of the lender.
I
Charles T. Jenkins, a resident of Jackson County, Mississippi, applied for a loan in July 1987 with Eastover Bank for Savings (Eastover), a banking institution which maintains a branch facility in Pascagoula, Mississippi. Jenkins, a self-employed carpenter, owned property at 6102 Flagstone Drive, a/k/a Lot 10 of the Dog River Estates Subdivision, in Pascagoula and was in the process of constructing a residence for himself. Jenkins was divorced and lived by himself. His application indicated that the intended use of the loan was to “finish the house”. Jenkins claims that he had been living in the house since about March 1987.
Eastover made the first loan to Jenkins on July 28, 1987. The loan for $30,010 was secured by a deed of trust on Jenkins’ property. According to an appraisal report dated July 21, 1987, construction of the residence was 85% complete at that time. Jenkins used half of the $30,010 to pay off an earlier $15,000 loan (made by Metropolitan National Bank to Jenkins on March 27, 1987), which Jenkins had used to buy some of the material used in the house. Jenkins claims that he used the other half of the money for daily living expenses. He states that he did not apply for any loans until he had used all of his savings and had constructed most of the house.
Eastover made a second loan to Jenkins on August 13,1987. This loan was secured by a deed of trust on Jenkins’ residence and amounted to $10,010. Jenkins claims that his residence was fully completed at the time the second loan was made. Jenkins claims that he used the money for additional daily living expenses. Eastover, by affidavit, disputed that the home was complete.
Jenkins did not make required payments on his outstanding loans. Jenkins claims that he had a drinking problem at the time the loans were made to him by Eastover, and that he was unaware of the deeds of trust. It is undisputed that Eastover failed to disclose to Jenkins notice of the three-day right to rescind and cancel the deed of trust at the time that each of the two loans were made.
Jenkins filed suit against Eastover requesting that the two loans and two deeds of trust be rescinded due to an alleged violation of the Truth-in-Lending Act. Eastover entered a motion for summary judgment claiming that the bank was exempt from the notice of a three-day right to rescind requirement of the Truth-in-Lending Act because the loans were made for *107 “initial construction” of the home. The circuit court granted the summary judgment without distinguishing between the two loans. Jenkins has appealed to this Court.
II
This Court conducts de novo review of a lower court’s grant of summary judgment. Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63 (Miss.1988). The question presented is whether there are issues of material fact which should have precluded the granting of summary judgment. This Court does not resolve disputed issues of fact. Mississippi Road Supply Co. v. Zurich-American Insurance Co., 501 So.2d 412, 414 (Miss.1987). Further,
[Sjince a summary judgment serves to effectively terminate a lawsuit, they should only be “granted with great caution.” In a recent case this Court expanded that idea by stating the following:
All motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment is sought should be given the benefit of every reasonable doubt.
It is also important to note that Rule 56 requires that before a summary judgment can be granted there must be no genuine issue of “material” fact. The question then becomes, what is a “material” fact? This Court has recently held that a material fact “tends to resolve any of the issues, properly raised by the parties.” This means that if a “material” fact or facts are present in the case, summary judgment should not be granted.
Mink v. Andrew Jackson Casualty Insurance Co., 537 So.2d 431, 433 (Miss.1988) (citations omitted).
III
Jenkins argues that Eastover, by failing to disclose notice of the three-day right to rescind and cancel the deed of trust, did not comply with the Truth-in-Lending Act and that the loan transactions are thus void. He argues that, since the house was already in existence when he secured the $30,010 loan and since the house was complete when he secured the $10,010 loan, the loans were not made for “initial construction” of his home and do not qualify under the construction exception of the Truth-in-Lending Act.
Eastover argues that it complied with the Truth-in-Lending Act, because it was not required to disclose the three-day right to rescind and cancel the deed of trust. It claims that the loans qualify as an exempt transaction under the Truth-in-Lending Act, because it was a “residential mortgage transaction”.
Title I of the Consumer Credit Protection Act, originally passed by the U.S. Congress in 1968, is commonly known as the Truth-in-Lending Act. See 15 U.S.C. § 1601 et seq. The Board of Governors of the Federal Reserve System, pursuant to their authority under the Consumer Credit Protection Act, have provided a set of regulations in order to implement the Truth-in-Lending Act. These regulations, found at 12 C.F.R. § 226 et seq. are commonly known as Regulation Z.
The purpose of the Truth-in-Lending Act and Regulation Z is to promote the full disclosure of credit terms and to convey information to potential debtors in a manner which allows potential debtors to make intelligent, informed decisions as to the cost of available credit. See GAC Finance Corp. of Spokane v. Burgess, 16 Wash.App. 758, 558 P.2d 1386 (1977). Congress passed the Truth-in-Lending Act to encourage consistent and fair treatment of borrowers. Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 (11th Cir.1982).
As Jenkins contends, the provisions of the Truth-in-Lending Act and its Regulation Z should be liberally construed in favor of borrowers/consumers. Jones v. *108 TransOhio Savings Asso., 747 F.2d 1037 (6th Cir.1984); Bizier v. Globe Financial Services, Inc., 654 F.2d 1 (1st Cir.1981); James v. Home Construction Co. of Mobile, Inc., 621 F.2d 727 (5th Cir.1980); Cody v. Community Loan Corp. of Richmond County, 606 F.2d 499 (5th Cir.1979), rehrg. den’d, 608 F.2d 1373 (5th Cir.1979), cert. den’d, 446 U.S. 988, 100 S.Ct. 2973, 64 L.Ed.2d 846 (1980); McGowan v. King, Inc., 569 F.2d 845 (5th Cir.1978); Johnson v. McCrackin-Sturman Ford, Inc., 527 F.2d 257, 34 A.L.R.Fed. 450 (3rd Cir.1975); Porter v. Hill, 108 Or.App. 418, 815 P.2d 1290 (1991); GAC Finance Corp. of Spokane v. Burgess, 16 Wash.App. 758, 558 P.2d 1386 (1977); Martin v. American Express, Inc., 361 So.2d 597 (Ala.Civ.App.1978). However, there must be strict compliance with technical requirements of the Truth-in-Lending Act so that the goal of standardization of terms can be achieved, and so that consumers can make meaningful comparisons of available credit alternatives. See Matter of Sharif, 23 B.R. 519 (D.C.Ga.1982); Glenn v. Trust Co. of Columbus, 262 S.E.2d 590 (Ga.App.1979).
Jenkins claims that Eastover was required to provide him the right to rescind under Regulation Z and required to disclose this right to him. Jenkins claims that East-over failed to comply with these requirements. Regulation Z, 12 C.F.R. § 226.23 provides in pertinent part:
§ 226.23 Right of rescission.
(a) Consumer’s right to rescind. (1) In a credit transaction in which a security interest is, or will be retained or acquired in a consumer’s principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.
* * * * * *
(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
(1) The retention or acquisition of a security interest in the consumer’s principal dwelling.
(2) The consumer’s right to rescind the transaction.
(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor’s place of business.
(4) The effects of rescission, as described in paragraph (d) of this section.
(5) The date the rescission period expires.
(c) Delay of creditor’s performance. Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.
(d) Effects of rescission. (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
* * * * * ⅝:
(f) Exempt transactions. The right to rescind does not apply to the following:

(1) A residential mortgage transaction.

(2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer’s principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.
(3) A transaction in which a state agency is a creditor.
(4) An advance, other than an initial advance, in a series of advances or in a series of single-payment obligations that is treated as a single transaction under *109 § 226.17(c)(6), if the notice required by paragraph (b) of this section and all material disclosures have been given to the consumer.
(5) A renewal of optional insurance premiums that is not considered a refinancing under § 226.20(a)(5). (All underlining added.)
The arguments of the parties here are simple. Jenkins interprets this section of Regulation Z to require Eastover to provide him the three-day right of rescission and to require Eastover to give him notice of his three-day right of rescission. Eastover interprets this section of Regulation Z to exempt the type of loan made to Jenkins from the three-day right of rescission and any notice therefor. Eastover is correct.
According to the definitional sections of the Truth-in-Lending Act and of Regulation Z, a “residential mortgage transaction” is defined as “a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer’s principal dwelling to finance the acquisition or initial construction of that dwelling.” 15 U.S.C. § 1602(w); 12 C.F.R. § 226.2(24).
The parties are in dispute over interpretation of this definition. Jenkins believes that the loans were not a “residential mortgage transaction”, and thus not an exemption to the three-day right of rescission, because the loans made to him by Eastover were not for the “initial construction” of his home since the dwelling was 85% complete when he applied for the loans and received the first loan and since the dwelling was complete when he received the second loan. Eastover believes that the loans were indeed a “residential mortgage transaction”, and thus an exemption to the three-day right of rescission, because the loans were made to pay for the initial construction costs of his dwelling that Jenkins had incurred while building the home and because the home was not complete when Jenkins applied for the loans.
The definition of “initial construction” pursuant to Regulation Z has not been propounded by any court, state or federal. As both parties have pointed out, a Rhode Island federal district court addressed a similar issue, although the federal court did not define “initial construction”, in French v. Wilson, 446 F.Supp. 216 (D.R.I.1978).
In French, Mr. and Mrs. French owned a parcel of land and a home on the land. They sold the land but retained ownership of the home. Mr. and Mrs. French purchased a vacant lot with the proceeds of a $7,000 loan. The $7,000 loan was secured by the purchased land. Mr. and Mrs. French then borrowed $12,000 from the same banking institution and used the proceeds to pay off the original $7,000 debt and to cover the costs of moving their home from its original location to its new site. The $12,000 loan was secured by the purchased land and the home. About one- and-a-half-years later, Mr. and Mrs. French attempted to rescind the transaction with the banking institution. The banking institution claimed that the loan transaction fell within the exceptions to the Truth-in-Lending Act notice of right to rescind because the loan was provided for the “initial construction” of a dwelling. The federal district court found that the Truth-in-Lending Act was applicable to the banking transactions of Mr. and Mrs. French because the loan was not made to Mr. and Mrs. French for the “initial construction” of their home and was thus not an exception to the Truth-in-Lending Act. Id. at 218. The federal court found in favor of Mr. and Mrs. French and said that the banking institution should have conformed to the protections of the Truth-in-Lending Act such as notice to Mr. and Mrs. French of their three-day right to rescind. Id. at 219.
Pertinent to the issue in the instant case, the French court acknowledged that a security interest created for “initial construction” or “in connection with a loan committed prior to the completion of construction of a customer’s residence to satisfy that construction loan and provide permanent financing of that residence” qualifies as an exception to the notice of a three-day right of rescission requirement under the Truth-in-Lending Act. Id. at 218.
*110 Distinguishing the situation before it, the court explained:
Conceptually, the facts of this case are somewhat analogous to the situation where a borrower finances a home improvement loan. Where the borrower is a homeowner who borrows money to improve the very “roof over his head,” it is important that such borrower be given all protections mandated by the Truth-in-Lending Act, especially the right to rescind during the cooling off period. This protects a borrower from hastily entering into financing arrangements where the possibility exists that he could lose his home upon default if he should reconsider and attempt to disavow the contract entered into. Although plaintiffs herein were “improving” their home in an unconventional manner — by moving it to another location away from a restaurant — they nonetheless should have been given every safeguard provided by the Act, including disclosure of the statutory right to rescind.
Id, at 219.
Jenkins argues that French, if adopted here, is dispositive of the case at bar in his favor. Jenkins asserts that French stands for the proposition that a dwelling that already exists before a loan is sought is already in existence and therefore does not fall within the purview of “initial construction”. Jenkins adds that “initial construction” is an ambiguous term- that should be construed liberally in favor of the consumer.
Eastover likewise argues that the French reasoning is dispositive of the case at bar in their favor. Eastover asserts that French interprets the “initial construction” exception to include loans made where the dwelling is “prior to completion of construction”. The trial court accepted East-over’s argument and concluded that “initial construction” includes all loans through the initial “permanent” financing of the residence.
We agree. In our view, the term “initial construction” cannot be reasonably construed to include only loans applied to the first part or any designated percentage of construction. If a dwelling that was 85% complete was not included in the “initial construction” exemption and was classified as a dwelling that was already in existence, then when would a house under construction cease being under “initial construction” and become a pre-existing home? There is no bright line that delineates when an incomplete building becomes an existing structure. “Initial construction” must include any stage before completion, and includes both initial and permanent financing loans to aid in completion.
Jenkins’ home was not yet complete when he applied and began receiving proceeds from the first loan transaction of $30,010. His application indicated that he was borrowing funds to complete the house. He used the proceeds of the first loan for, in his words, “permanent financing.” Jenkins’ home therefore falls within the purview of the “initial construction” exemption of the three-day right of rescission notice requirement under the Truth-in-Lending Act as to this loan. Eastover was not required to make any disclosure of the three-day right to rescind when Jenkins borrowed the $30,010.
IV
There is no indication that the second loan was intended or used for the completion of the home. Although the bank offers testimony that the home was not yet complete at the time the proceeds of $10,010 loan were disbursed, that testimony, at best, creates only a genuine dispute of fact as to completion. Of course, even if the home were incomplete at the time, the question remains whether the proceeds of the second loan were in any way intended to be used for completion. There is no statement in the loan application designating a purpose for the $10,010. There appears no evidentiary support for the contention that the second loan was in the nature of a second “draw” on the first loan even thought it is noted that the second loan is subject to a “draw”, that is, as we understand it, to be disbursed in stages. The second loan was repayable in one year, the first in five years. These loans may *111 not be treated as one. As to the second loan, the bank is not entitled to summary judgment.
Y
For the foregoing reasons, the judgment, of the trial court is vacated insofar as it grants summary judgment in favor of Eastover with respect to Jenkins’ claim on the loan of $10,010 and this matter is remanded to the trial court for further proceedings as to that matter. In all other respects the judgment is affirmed.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and McRAE, JJ., concur.
PITTMAN, J., not participating.

. 15 U.S.C. § 1601 et seq.