# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-CT-00455-SCT

*QUINTON STRONG*

*v.*

*ACARA SOLUTIONS, INC.*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2024 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| TRIAL COURT ATTORNEYS: | MARISSA JO WATSON |
| | WILTON V. BYARS, III |
| | TAMARA V. McGEE |
| | MARY CHANDLER COSSAR |
| | RAYNETRA LASHELL GUSTAVIS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAYNETRA LASHELL GUSTAVIS |
| | ROGEN K. CHHABRA |
| | SAVANNAH FRANCES HERRINGTON |
| ATTORNEYS FOR APPELLEE: | WILTON V. BYARS, III |
| | TAMARA V. McGEE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT IS REVERSED AND REMANDED - 06/04/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The writ of certiorari pleads that the Court of Appeals erred factually and legally. The Court is satisfied that Mississippi Rule of Appellate Procedure 17(a)(3) has been met because this is a case of first impression. We have never ruled on a case with a similar fact pattern.

We conclude that the decision of the Court of Appeals is well grounded in law and fact. We also hold that the Court of Appeals' decision is consistent with the United States bankruptcy code and federal case law according to the United States Court of Appeals for the Fifth Circuit.

¶2. Quinton Strong ("Strong") was injured on the job by a person he thought was an employee of his employer, Siemen's Industry, Inc. ("SII"). The person, Shaniqua Martin ("Martin"), was actually an employee of Superior Staffing Services, Inc. ("Superior"), now known as Acara Solutions, Inc. ("Acara"). One year after Strong's Chapter 13 wage earner's bankruptcy proceeding was *dismissed without discharge* in the United States Bankruptcy Court for the Northern District of Mississippi, Strong sued Acara and Martin in a Mississippi state court. Acara moved for summary judgment, arguing Strong was judicially estopped from pursuing his personal-injury claim because he never disclosed the claim to the bankruptcy court. Strong argued that the second element of judicial estoppel was not met because the bankruptcy court had dismissed his case without discharge. The Fifth Circuit has held that such a denial revokes acceptance of any inconsistent position based on 11 U.S.C. § 349(b). *See **Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)***, 698 F.3d 231 (5th Cir. 2012).

¶3. Nonetheless, the trial court disagreed and granted summary judgment to Acara, finding that the elements of judicial estoppel were met. The Court of Appeals reversed, relying on the Fifth Circuit's opinion that a federal bankruptcy court revokes acceptance of that party's position when it dismisses the party's claim without discharge, which is exactly

what occurred in this case. ***Strong v. Acara Sols., Inc. (Strong II)***, No. 2024-CA-00455-COA, 2025 WL 1441609, at *1 (Miss. Ct. App. May 20, 2025); *see also* ***Oparaji***, 698 F.3d 231.

¶4.     On writ of certiorari, Acara argues (1) the Court of Appeals erred by reviewing the trial court's judgment de novo instead of reviewing it for abuse of discretion, (2) the Court of Appeals erred by finding the acceptance element of judicial estoppel was not met, and (3) the Court of Appeals improperly discounted the benefit of the automatic stay. We reject each of the aforementioned arguments and affirm the judgment of the Court of Appeals. The judgment of the DeSoto County Circuit Court is reversed and remanded.

## FACTS AND PROCEDURAL HISTORY

¶5.     The facts here involve an overlap of jurisdictions: the United States bankruptcy court, the Fifth Circuit, and a state court.

¶6.     May 21, 2018: Strong started work at SII as a warehouse operator. Eight days later, a forklift operated by another worker pinned Strong against some pallets, injuring him. He did not know the identity of the operator or the operator's employer at that time.

¶7.     January 2, 2019: Strong filed a claim with the Mississippi Workers' Compensation Commission against SII, giving notice to the defendant's predecessor. He also filed for Chapter 13 bankruptcy. Strong hired an attorney to handle his bankruptcy and a separate attorney, his current counsel,[1] to represent him in his workers' compensation case.

¶8.     January 22, 2019: Strong's bankruptcy attorney filed Strong's bankruptcy schedules.

---

[1]Strong's current counsel represents him in the case *sub judice*.

3

Question 33 of his Form 106A/B questioned if he had "claims against third parties, whether or not you have filed a lawsuit or made a demand or payment." The schedule indicated no. Question 34 questioned if he had "other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." The schedule indicated yes and "**Pending Worker's Compensation claim for work related injury against employer and employers** [sic] **worker's comp insurance carrier**."

¶9.     February 26, 2019: the Trustee, Locke D. Barkley, conducted a meeting of the creditors. After taking Strong's oath, the Trustee asked:

Trustee: Are you currently involved in any type of lawsuit or class action?

Strong: Uh, worker's comp, but I mean . . .

Trustee: Okay. Other than that, anything else?

Strong: No, uh, no.

Trustee: Is that purely just worker's comp claim?

Strong: Yes, just worker's comp claim.

¶10.    April 25, 2019: Strong's current counsel emailed Strong's bankruptcy attorney copies of Strong's workers' compensation contract and a separate personal-injury contract.[2] His bankruptcy attorney never updated Strong's bankruptcy schedules to include a third-party suit before Strong's dismissal without discharge.

¶11.    September 23, 2019: Strong learned that Shaniqua Martin was the operator of the forklift that injured him at the workplace. He also learned for the first time that she was

---

[2]The record does not include the contracts or indicate when the contracts were signed.

employed by Superior.

¶12.    March 4, 2020: the bankruptcy court issued its Agreed Order Granting Motion to Dismiss. Based on the Motion to Dismiss and Strong's response, the court ordered that "the Motion shall be and is hereby granted" and "this case shall be and is hereby dismissed."

¶13.    May 26, 2021: Strong's attorney filed a personal-injury claim against Superior and Shaniqua Martin in the Circuit Court of DeSoto County. This occurred almost fifteen months after the bankruptcy case was dismissed without discharge.

¶14.    June 16, 2021: Strong's complaint was amended to include Superior at multiple locations.

¶15.    June 30, 2021: counsel for SII emailed Strong's current counsel asking to limit the scope of a subpoena duces tecum from Strong. SII's counsel asked that the subpoena be limited to "records regarding Superior . . . present at the SII facility where Mr. Strong worked from May 29, 2018 to June 30, 2018 . . . ." Within two hours, Strong's current counsel responded that she was "really looking for" the employer of "Shaniqua Martin, the operator of the forklift that struck Mr. Strong. We believe it was Superior . . . per [SII] discovery responses in the Workers['] Compensation case . . . ." On July 1, 2021, at 6:17 a.m., counsel for SII responded, "I have been advised that the 'Superior Staffing' that supplied SII with contract workers in 2018 changed its corporate name and is now known as Acara Solutions," which was headquartered in Buffalo, New York. Later that day, Strong amended his complaint to include Acara as a party.

¶16.    November 2, 2021: Strong responded to Acara's first set of interrogatories. One

interrogatory requested that Strong "state whether you have ever been a party to any legal proceeding other than the instant one, either before or after the subject accident, including any workers' compensation claim, EEOC claim, criminal case, or bankruptcy case." Strong disclosed "Plaintiff filed a workers' compensation claim against Siemens Industry, Inc.[,] for the subject injuries in or around 2019." On June 14, 2022, Strong reaffirmed under oath that his responses to Acara's interrogatories were "true and correct."

¶17.   July 28, 2022: Acara filed a motion for summary judgment. Acara argued that Strong was judicially estopped from bringing a personal-injury claim because he previously told the bankruptcy court he had no other claims than the workers' compensation claim. Strong argued that not one of the elements of judicial estoppel, including judicial acceptance, had been met.

¶18.   November 7, 2022: the trial judge held a hearing on Acara's motion for summary judgment and ruled from the bench. The court opined that the first element of judicial estoppel was met, opining a personal-injury claim is an asset and "the mere omission of a claim of bankruptcy filings is tantamount to a representation that no such claim exists."

¶19.   The court opined the second element was met because

> when the bankruptcy court entered an order discharging the plaintiff from bankruptcy, the [bankruptcy c]ourt effectively accepted the representations that the plaintiff made a full and complete disclosure of their assets. The [bankruptcy c]ourt can also accept the representations by confirming a repayment plan since adoption of the position of the [bankruptcy c]ourt only requiring that the [bankruptcy] court has adopted the position earthed [sic] by the party either as a preliminary matter or as a final disposition.

¶20.   Finally, the trial judge opined that the third element was met because, even though

both of Strong's attorneys bore some blame, case law presumed the nondisclosure was inadvertent, Strong knew the claim existed, and Strong had a motive for concealment. The circuit judge ruled that Strong's claim was judicially estopped. She granted Acara's motion for summary judgment from the bench, and she issued a written order nunc pro tunc confirming her bench opinion. Strong appealed the grant of summary judgment, which we assigned to the Court of Appeals.

¶21.    Three weeks after the trial court granted summary judgment, this Court held that non-inadvertence could not "be merely inferred or presumed." *Strong v. Acara Sols., Inc. (Strong I)*, 375 So. 3d 1214, 1217 (Miss. Ct. App. 2023) (internal quotation mark omitted) (quoting *Saunders v. Nat'l Collegiate Athletic Ass'n*, 352 So. 3d 618, 625 (Miss. 2022)). Rather, "trial courts should consider the specific facts and circumstances to determine if judicial estoppel applies." *Id.* at 1218 (internal quotation mark omitted) (quoting *Saunders*, 352 So. 3d at 625). Because of the trial court's presumption of non-inadvertence, on December 12, 2023, the Court of Appeals "reversed and remanded for the trial court to apply the clarified test announced in *Saunders*[.]" *Id.* (quoting *Saunders*, 352 So. 3d at 625).

¶22.    March 20, 2024: the trial court again granted summary judgment to Acara. The trial court opined that the first element was met because Strong omitted the personal-injury case he now pursues from the bankruptcy court. The trial court opined that the second element was met because "when the bankruptcy court confirmed Mr. Strong's Chapter 13 bankruptcy plan, such confirmation reflected the bankruptcy court's acceptance that Mr. Strong had fully and completely disclosed all of his assets, which disclosure did not include the instant claim."

7

The trial court opined that the third element was met because Strong had a third-party claim, as Strong entered into a personal-injury contract with his current counsel, Strong learned of Martin and Superior Staffing/Acara at some point during the bankruptcy proceedings, and he gave "patently false response[s]." The trial judge again opined that Strong was judicially estopped from making this claim and once again granted summary judgment for Acara.

¶23.    Strong filed his second notice of appeal. The Court of Appeals again reversed the trial court's decision and held "that the trial court erred as a matter of law when it determined that the acceptance element of judicial estoppel was met." **Strong II**, 2025 WL 1441609, at *3. The Court of Appeals found the "revocation-of-acceptance-upon-dismissal-argument" is an issue of first impression for Mississippi's appellate courts. **Id.** at *4. As bankruptcy law is federal law, the Court of Appeals looked to the Fifth Circuit for guidance and instruction. **Id.** (citing **In re Oparaji**, 698 F.3d at 233). In **Oparaji**, "[t]he Fifth Circuit agreed with the creditor's argument that because 'the Bankruptcy Court dismissed Debtor's bankruptcy plan without granting a discharge, the court's acceptance of that plan was negated and the parties were no longer bound by its terms.'" **Strong II**, 2025 WL 1441609, at *5 (quoting **In re Oparaji**, 698 F.3d at 238). The Court of Appeals opined the Fifth Circuit's legal reasoning was "wholly applicable" and held that the United States bankruptcy court had revoked its acceptance as a matter of law. Thus, Strong did not meet the second element of judicial estoppel. **Id.** The Court of Appeals reversed and remanded again. **Id.** at *8-9.

¶24.    The dissent, joined by one other judge, accepted Acara's arguments that all three elements of judicial estoppel were met. **Id.** at *9 (Emfinger, J., dissenting). Regarding the

8

second element, the dissent opined that the Court of Appeals' own precedent in ***Jackson v. Harris***, 303 So. 3d 454, 457 (Miss. Ct. App. 2020), was controlling and that Mississippi chose to not adopt this argument despite the ***Jackson*** court's never addressing ***Oparaji*** or other Fifth Circuit cases following the ***Oparaji*** rule. ***Strong II***, 2025 WL 1441609, at \*9. It was also argued that the Fifth Circuit's discussion of this issue was dicta despite the Fifth Circuit's later reaffirming the principles set forth in the dicta in ***Oparaji***. ***Strong II***, 2025 WL 1441609, at \*11; ***Allen v. C & H Distribs., L.L.C.***, 813 F.3d 566, 572-73 n.5 (5th Cir. 2015); ***Viegelahn v. Lopez (In re Lopez)***, 897 F.3d 663, 670 (5th Cir. 2018) (citing ***In re Oparaji***, 698 F.3d at 238); ***Sims v. Round Point Mortg. Servicing Corp.***, 760 F. App'x 306, 313 (5th Cir. 2019) (citing ***In re Oparaji***, 698 F.3d at 238). The dissent would have affirmed the trial court's grant of summary judgment. ***Strong II***, 2025 WL 1441609, at \*13.

¶25.   September 25, 2025: Acara sought a petition for certiorari, which this Court granted.

## ANALYSIS

I.   **The Court of Appeals did not err by reviewing the trial court's judgment de novo instead of reviewing for abuse of discretion.**

¶26.   Acara first argues the Court of Appeals applied the wrong standard of review by reviewing the trial court's judgment de novo instead of reviewing for abuse of discretion. This issue is without merit.

¶27.   As explained by the Court of Appeals, Mississippi appellate courts apply a "two-pronged standard of review" when reviewing a grant of summary judgment for judicial estoppel. ***Jones v. Alcorn State Univ.***, 337 So. 3d 1062, 1067 (Miss. 2022). First, this Court reviews a trial court's application of judicial estoppel for abuse of discretion. ***Id.*** at 1066-67

9

(citing *Adams v. Graceland Care Ctr. of Oxford, LLC*, 208 So. 3d 575, 579 (Miss. 2017); *Jourdan River Ests., LLC v. Favre*, 278 So. 3d 1135, 1153 (Miss. 2019); *Rogers v. Gulfside P'ship*, 206 So. 3d 1274, 1278 (Miss. Ct. App. 2016); *Jackson*, 303 So. 3d at 457). Second, this Court reviews the grant or denial of summary judgment de novo. *Id.* (citing *Copiah Cnty. v. Oliver*, 51 So. 3d 205, 207 (Miss. 2011)).

¶28.    "For questions of law, we employ a de novo standard of review and will only reverse for an erroneous interpretation *or* application of the law." *Thoden v. Hallford*, 391 So. 3d 1137, 1144 (Miss. 2024) (emphasis added) (internal quotation marks omitted) (quoting *Okoloise v. Yost*, 283 So. 3d 49, 55 (Miss. 2019)). "All motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion." *Jenkins v. Eastover Bank for Sav.*, 606 So. 2d 105, 107 (Miss. 1992) (quoting *Mink v. Andrew Jackson Cas. Ins. Co.*, 537 So. 2d 431, 433 (Miss. 1988)).

¶29.    Here, the trial court erred, but the Court of Appeals did not. The Court of Appeals focused on the applicability of the rule announced by the Fifth Circuit in *Oparaji* and followed in *Lopez* and *Sims* that dismissal of a bankruptcy case without discharge revoked acceptance. *Strong II*, 2025 WL 1441609, at *3-8 (citing *In re Oparaji*, 698 F.3d at 238). Further, the Court of Appeals found that "the trial court erred as a matter of law" rather than as a matter of fact. *Id.* at *1, *8. Because the Court of Appeals ruled on a question of law, it did not err by reviewing that question de novo.

> II.    **The trial court committed an error of law by not applying Fifth Circuit precedent in its analysis of the second element of judicial estoppel.**

10

¶30.     Well before Mississippi was admitted into the Union, the Founders of our nation gave the United States Congress power "to establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . ." U.S. Const. art. I, § 8, cl. 4. As the United States Supreme Court held a long time ago, when the federal government enacts bankruptcy legislation, state law that contradicts it is invalid and void.[3] *Tua v. Carriere*, 117 U.S. 201, 209-10, 6 S. Ct. 565, 29 L. Ed. 855 (1886). The current iteration of federal bankruptcy law was enacted in the Bankruptcy Reform Act of 1978 and the Bankruptcy Amendments and Federal Judgeship Act of 1984. Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978); Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1948).

¶31.     "Judicial estoppel is designed to protect *the judicial system* and applies where 'intentional self contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Jones*, 337 So. 3d at 1068 (emphasis added) (internal quotation marks omitted) (quoting *Kirk v. Pope*, 973 So. 2d 981, 991 (Miss. 2007)). The principle of judicial estoppel is applied in federal and state courts throughout the United States. While it does not follow that the elements are the same, Mississippi chose to adopt the Fifth Circuit's elements for judicial estoppel: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the

---

[3]Mississippi law still controls some aspects of bankruptcy in this state. For example, in accordance with the Bankruptcy Reform Act of 1978, our legislature replaced the federal list of properties exempted from seizure with its own list. Miss. Code Ann. § 85-3-2 (Rev. 2021) (citing 11 U.S.C. § 522(b)); *see generally* Miss. Code Ann. §§ 85-3-1 through -52 (Rev. 2021).

11

previous position; and (3) the non-disclosure must not have been inadvertent." *Kirk*, 973 So. 2d at 991 (internal quotation marks omitted) (quoting *Superior Crewboats Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004)); *In re Oparaji*, 698 F.3d at 235 (providing the same elements).

¶32.   At issue is the second element: judicial estoppel requires that "a court accepted a previous position" of the party being judicially estopped. *Jones*, 337 So. 3d at 1069 (quoting *Clark v. Neese*, 131 So. 3d 556, 560 (Miss. 2013)). The heart of the parties' dispute is whether the United States bankruptcy court revoked its acceptance of Strong's position when the bankruptcy court dismissed the bankruptcy claim without discharge. Acara first argues that *Jackson*, 303 So. 3d 454, and a federal case, *Jethroe v. Omnova Solutions., Inc.*, 412 F.3d 598 (5th Cir. 2005), which precedes *Oparaji* by seven years, are controlling and require reversal. Acara then argues that *Oparaji* is distinguishable because unlike in Strong's case, the debtor was seeking to bar the creditor. Finally, Acara argues that the relevant holding in *Oparaji* is inapplicable because the holding was dicta.

¶33.   11 U.S.C. § 349(b) provides:

(b)    Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title–

(1)    reinstates–

(A)    any proceeding or custodianship superseded under section 543 of this title;

(B)    any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

**(C)** any lien voided under section 506(d) of this title;

**(2)** vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

**(3)** revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349.

¶34. The Fifth Circuit wrote in dicta[4] in 2012, post-***Jethroe***, that "Congress' *stated intent* . . . [was] to 'undo the bankruptcy case, as far as practicable, and to restore *all* property rights to the position in which they were found at the commencement of the case.'" ***In re Oparaji***, 698 F.3d at 238 (emphasis added) (internal quotation mark omitted) (citing ***In re Sanitate***, 415 B.R. 98, 104 (Bankr. E. D. Pa. 2009)). Most importantly, since ***Oparaji***, the Fifth Circuit has reaffirmed the underlying principle that "§ 349(b)'s purpose is clear: to 'undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" ***In re Lopez***, 897 F.3d at 670 (quoting ***In re Oparaji***, 698 F.3d at 238); ***Sims***, 760 F. App'x at 313 ("The dismissal effectively re-turned the parties to their original position . . . ." (citing ***In re Oparaji***, 698 F.3d at 238)). "Indeed, the bankruptcy estate ceases to exist upon dismissal," the bankruptcy "plan itself is defunct[,] and the case is over." ***In re Lopez***, 897 F.3d at 670-71. Based on this reasoning, the ***Oparaji*** court found that, for purposes of judicial estoppel, dismissal without discharge revokes acceptance by the bankruptcy court. ***Oparaji***, 698 F.3d at 238.

---

[4]The Fifth Circuit acknowledged that the ***Oparaji*** court's analysis of the second element of judicial estoppel was dicta. ***Allen***, 813 F.3d at 572-73 n.5. However, "the Allens ha[d] failed to raise any revocation of acceptance argument on appeal[.]" ***Id.*** Not so today.

¶35. "In the construction of a statutory enactment of the Congress of the United States, we give great weight and deference to the interpretations of . . . the Fifth Circuit, just as that Court respects our interpretations of enactments of the Legislature of the State of Mississippi." *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 366 n.4 (Miss. 1983) (citing *Jordan v. Watkins*, 681 F.2d 1067, 1077-1078 (5th Cir. 1982); *Bell v. Watkins*, 692 F.2d 999, 1010 (5th Cir. 1982)).

¶36. Here, Acara's contention that Strong met the second element of judicial estoppel is legally and factually incorrect. The bankruptcy court dismissed Strong's case without discharge, which undid the bankruptcy and returned the parties to their precommencement positions. *In re Lopez*, 897 F.3d at 670 (citing *In re Oparaji*, 698 F.3d at 238); *Sims*, 760 F. App'x at 313 (citing *In re Oparaji*, 698 F.3d at 238). When Congress intended that "*all* property rights" be restored, it meant *all*. Everything about the bankruptcy, including the bankruptcy plans, Strong's representations in those plans, and the bankruptcy court's acceptance of those plans, are "defunct" because "the [bankruptcy] case is over." *In re Lopez*, 897 F.3d at 671. Regardless of the facts of the case, including which party raised judicial estoppel, one party cannot hold another party to an assertion that is of no legal effect. Any holding otherwise would contradict the law's requirement that the party be returned to the precommencement position. As a result, the second element of judicial estoppel is not met.

¶37. Acara's arguments to the contrary are without merit. *Jethroe* was decided in 2005, seven years before the Fifth Circuit's decision in *Oparaji*, so it cannot inform what the law

would be after *Oparaji*. *See generally Jethroe*, 412 F.3d 598; *In re Oparaji*, 698 F.3d 231. Further, Jethroe's "bankruptcy case was *closed*" rather than dismissed. *Jethroe*, 412 F.3d at 599 (emphasis added). The Fifth Circuit distinguished case dismissal and case closing in the context of the acceptance element of judicial estoppel, rendering *Jethroe* inapplicable. *Allen*, 813 F.3d at 572-73 n.5. The Court of Appeals' opinion in *Jackson* is distinguishable because the bankruptcy litigation was *ongoing* when judicial estoppel was raised. *Jackson*, 303 So. 3d at 456. The *Jackson* court also did not indicate either party made an argument under *Oparaji* or its progeny. *Id.* at 454. Finally, the *Jackson* court only cited cases decided before *Oparaji*, including *Jethroe*.

¶38.    We do not ignore the relationship between federal bankruptcy law and state law on judicial estoppel to rule against Acara. Further, Mississippi adopted the Fifth Circuit's recitation of the elements of judicial estoppel. *Kirk*, 973 So. 2d at 991 (quoting *In re Superior Crewboats, Inc.*, 374 F.3d at 335). Rather than conceding state law to our federal colleagues, we are respecting their authority to interpret federal law in the same way that they respect our authority to interpret Mississippi law.

¶39.    The cases cited by the dissent in support of his conclusions, *Jones*, 337 So. 3d 1062, and *Adams*, 208 So. 3d 575, are distinguishable because neither case involved dismissal without discharge. In *Jones*, with which both this Justice and the dissenting Justice agreed, the bankruptcy case and breach-of-contract case were proceeding simultaneously. *Jones*, 337 So. 3d at 1065-66, 1069. In *Adams*, the bankruptcy case had been "fully discharged" before being reopened. *Adams*, 208 So. 3d at 577-78. Because neither bankruptcy court dismissed

15

the bankruptcy cases without discharge, the debtors were not returned to their precommencement positions as Strong was. *In re Lopez*, 897 F.3d at 670 (citing *In re Oparaji*, 698 F.3d at 238); *Sims*, 760 F. App'x at 313 (citing *In re Oparaji*, 698 F.3d at 238).

¶40. The bankruptcy court dismissed Strong's bankruptcy case without discharge, which the Fifth Circuit has held revokes the bankruptcy court's acceptance of Strong's representations. *Oparaji*, 698 F.3d at 238. Thus, Strong is not judicially estopped from bringing his personal-injury claim.

### III. The Court of Appeals did not improperly discount the benefit of the automatic stay.

¶41. Acara argues that the Court of Appeals should not have discounted the benefit conferred by the automatic stay because the stay gave Strong fourteen months of protection from his creditors. This issue is without merit because benefitting from an assertion is not an element of judicial estoppel. *Kirk*, 973 So. 2d at 991; *In re Oparaji*, 698 F.3d at 235.

### CONCLUSION

¶42. On writ of certiorari, Acara first argued that the Court of Appeals erred by reviewing de novo instead of reviewing for abuse of discretion. This issue is without merit because the Court of Appeals addressed a question of law, which warrants de novo review.

¶43. Acara then argued that the Court of Appeals erred by finding that the acceptance element of judicial estoppel was not met. However, dismissal of a bankruptcy case without discharge returns the involved parties to their precommencement positions.

¶44. Finally, Acara argued that the Court of Appeals improperly discounted the benefit of the automatic stay. Gaining a benefit from the misrepresentation is not an element of judicial

estoppel, so this issue is also without merit. ***Kirk***, 973 So. 2d at 991; ***In re Oparaji***, 698 F.3d

at 235.

¶45. For the foregoing reasons, we affirm the judgment of the Court of Appeals. We

reverse the judgment of the DeSoto County Circuit Court and remand the case for further

proceedings.

¶46. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT IS REVERSED AND REMANDED.**

**KING, P.J., ISHEE, GRIFFIS AND SULLIVAN, JJ., CONCUR. COLEMAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRANNING, J.**

**COLEMAN, PRESIDING JUSTICE, DISSENTING:**

¶47. While bankruptcy law is, indeed, controlled by federal law, judicial estoppel is not.

The majority loses sight of the dividing line in today's case, and, as a result, incorrectly holds

that the application of bankruptcy law to the doctrine of judicial estoppel by the United States

Court of Appeals for the Fifth Circuit is binding authority. In so doing, the majority changes

Mississippi's law on judicial estoppel in a way that weakens it, encourages attempted

concealment of claims, and fails to fully protect the integrity of Mississippi's courts. The

majority establishes a no-harm-no-foul standard for the application of judicial estoppel in

Mississippi that has already been twice rejected by us. Accordingly, and with respect, I

dissent.

I.      **The application of judicial estoppel is a matter of state law.**

¶48. The applicability (or non-applicability) of judicial estoppel is a matter of Mississippi

17

law.  ***Clark v. Neese***, 131 So. 3d 556, 560 (¶ 17) (Miss. 2013).  The purpose of judicial estoppel is to require "orderliness and regularity in pleadings."  ***City of Horn Lake v. City of Southaven (In re Mun. Boundaries of City of Southaven)***, 864 So. 3d 912, 919 (¶ 17) (Miss. 2003) (internal quotation mark omitted) (quoting ***Mauck v. Columbus Hotel Co.***, 741 So. 2d 259, 264-265 (Miss. 1999)).  "Judicial estoppel operates to protect the integrity of the judicial system."  ***Adams v. Graceland Care Ctr. of Oxford, LLC***, 208 So. 3d 575, 580 (¶ 14) (Miss. 2017) (citing ***Gibson v. Williams, Williams & Montgomery, P.A.***, 186 So. 3d 836, 847 (¶ 24) (Miss. 2016)).  Without question, Mississippi courts apply the doctrine of judicial estoppel to protect the integrity of Mississippi's judicial system.  Accordingly, it is a matter of state law that we should be loath to concede to our federal colleagues.

¶49.    Federal courts have acknowledged that states have their own laws of judicial estoppel. In diversity cases, federal courts have acknowledged a question exists as to whether the doctrine of judicial estoppel is substantive such that state law would apply to the federal civil action or procedural such that federal law of judicial estoppel would apply.  *See **Gibson Found., Inc. v. Norris***, 159 F.4th 147, 152-154 (1st Cir. 2025); *see also **John Hancock Life Ins. Co. v. Abbot Lab'ys***, 863 F.3d 23, 34 (1st Cir. 2017).  It has long been understood that federal courts must apply the substantive law of the states in cases brought pursuant to the federal courts' diversity jurisdiction, ***Erie R.R. Co. v. Tompkins***, 304 U.S. 64 (1938), and in acknowledging the question of whether state or federal law applies federal courts have acknowledged that states have control over their approaches to judicial estoppel.

## II.    Mississippi's Law of Judicial Estoppel

18

¶50. Judicial estoppel applies "when one party asserts a position contrary to one taken in prior litigation." *Clark*, 131 So. 3d at 560 (¶ 15) (citing *Thomas v. Bailey*, 375 So. 2d 1049, 1052-53 (Miss. 1979), *implied overruling recognized by* *Logan v. RedMed, LLC*, 377 So. 3d 956, 962 (Miss. 2024); *Wright v. Jackson Mun. Airport Auth.*, 300 So. 2d 805 (Miss. 1974); *Sullivan v. McCallum*, 231 So. 2d 801 (Miss. 1970)). "The purpose of judicial estoppel is to prevent parties from knowingly taking a position in one court that is contrary to a position that party has asserted in, and that has been accepted by, another court." *Clark*, 131 So. 3d at 561 (¶ 21). "Judicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Adams*, 208 So. 3d at 582 (¶ 21) (internal quotation marks omitted) (quoting *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

¶51. Judicial estoppel stops one from asserting one position in one court only to change positions later, in another court, when doing so has profit potential. *Clark*, 131 So. 3d at 560 (¶ 15); *Richardson v. Cornes (In re Est. of Richardson)*, 903 So. 2d 51, 56 (¶ 17) (Miss. 2005); *Gibson*, 186 So. 3d at 846. "Allowing the debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *Jones v. Alcorn State Univ.*, 337 So. 3d 1062, 1069 (¶ 22) (Miss. 2022) (internal quotation marks omitted) (quoting *Adams*, 208 So. 3d at 581).

¶52. As demonstrated above, heretofore, Mississippi has applied a robust doctrine of judicial estoppel designed to prevent parties from gaining advantage by denying in the

19

bankruptcy court that a claim has value only to later file a civil action in Mississippi's courts seeking to recover. We have acknowledged that later action in the bankruptcy court that, after the fact, remediates the party's deception does not lessen the need for or appropriateness of the doctrine because doing so would encourage attempts at deception. In *Jones*, for example, the bankruptcy debtor only disclosed his claim to the bankruptcy court after it was discovered by the defendant in his state court action. *Jones*, 337 So. 3d at 1070 (¶ 29). Despite the fact that the bankruptcy court amended the debtor's schedules, thereby rendering the debtor's attempted concealment of her claim ineffective, the Mississippi Supreme Court held that the doctrine of judicial estoppel applied to bar her state court claim. *Id.* at 1071-72 (¶ 35).

### III. The Fifth Circuit's *Oparaji* Decision

¶53. In the Fifth Circuit's ***Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)***, 698 F.3d 231 (5th Cir. 2012), a debtor failed to make payments on a balloon note and deed of trust in favor of Wells Fargo Home Mortgage. *Id.* at 233. Seeking Chapter 13 bankruptcy relief, the debtor entered a plan whereby the debtor would make payments on the prebankruptcy debt to the bankruptcy trustee while continuing to make regular postbankruptcy payments to Wells Fargo. *Id.* Less than year later, the debtor again fell behind on his payments to Wells Fargo, and Wells Fargo sought a lifting of the bankruptcy stay to be able to foreclose. *Id.* The bankruptcy court approved a modified Chapter 13 plan. *Id.* at 234. Two years later, the debtor filed another motion to modify the plan. *Id.* The new plan only provided for the ongoing mortgage payments to Wells Fargo, and it failed to address prior postpetition

20

payments as to which the debtor had defaulted. *Id.* Afterwards, a third modified plan was approved by the bankruptcy court after Wells Fargo amended its proof of claim to include delinquent taxes. Finally, the bankruptcy trustee moved to dismiss the bankruptcy, and the bankruptcy court did so without discharging the debtor. *Id.*

¶54. Three months after the dismissal, the debtor instituted a new bankruptcy proceeding. *Id.* In the second bankruptcy, Wells Fargo submitted evidence of numerous defaults and arrearages on the part of the debor. *Id.* In response, the debtor initiated the lawsuit that was the subject of the ***Oparaji*** Court's opinion, in which the debtor contested the amount of Wells Fargo's claim and sought to prevent Wells Fargo from asserting part of its claim pursuant to the doctrine of judicial estoppel. *Id.* at 234-35. The bankruptcy court entered summary judgment in favor of the debtor, finding that Wells Fargo was judicially estopped from filing a claim that included amounts that could have been but were not included in the first bankruptcy. *Id.*

¶55. In reversing the grant of summary judgment, the Fifth Circuit held that Wells Fargo had not taken inconsistent positions. *Id.* at 237. It did not base its holding on the element of judicial acceptance, and its discussion of the judicial acceptance element is clearly *dicta*. "Since we hold that Wells Fargo did not assert legally inconsistent positions in the proceedings below, we need not even reach this issue. However, we will briefly address the reasons why the Bankruptcy Court's acceptance of Wells Fargo's claims was revoked when Debtor's bankruptcy was dismissed without a discharge." *Id.* at 238.

¶56. Even were it not *dicta*, ***Oparaji*** concerns the applicability of the doctrine of judicial

21

estoppel in a setting far different from the one in the case *sub judice*. ***Oparaji*** addresses whether judicial estoppel should apply between the bankruptcy debtor and one of his creditors over whether or not part of the debt could be made part of the bankruptcy estate in a subsequent bankruptcy. It is nothing like the case today, in which a bankruptcy debtor misrepresented to the bankruptcy court the value of a claim and obtained relief from the bankruptcy court (albeit temporary). It is true that as between Wells Fargo and Oparaji, the dismissal of the bankruptcy without discharge put the two parties back to square one, but the application of the doctrine by Mississippi courts in the context of today's case has never been about the relationship between the bankruptcy debtor and creditor. The application of the doctrine by Mississippi courts in the current context is about protecting the integrity of Mississippi's judicial process by not allowing a party to try to benefit themselves by misleading the bankruptcy court only to proceed on an undisclosed claim in Mississippi courts. Accordingly, ***Oparaji*** fails to control or even persuade as to the issue before us today.

## IV.    Judicial Acceptance

¶57.    The instant case, contrary to the majority's assertion, does not present a pure question of first impression. In ***Jones v. Alcorn State Univ.***, 337 So. 3d 1062 (Miss. 2022), mentioned above, we held that judicial acceptance of a bankruptcy debtor's failure to disclose a claim is not revoked when, in the end, the debtor's attempt at concealment fails to affect the outcome of the debtor's bankruptcy. In ***Jones***, the plaintiff, Ernest T. Jones, sued the Board of Trustees of the State Institutions of Higher Learning for breach of contract. *Id.* at 1065 (¶ 2). Years later, Jones filed for bankruptcy in Florida, swearing "under penalty

22

of perjury" that he had no unliquidated or contingent claims. *Id.* at 1065 (¶ 3). However, Jones did not disclose his lawsuit against Alcorn State. *Id.* The same day that Jones won a $500,000 verdict on his claim in state court, he moved to dismiss his Florida-based bankruptcy proceeding. *Id.* at 1065 (¶ 4).

¶58. After the $500,000 verdict, the Board of Trustees successfully moved for a judgment notwithstanding the verdict in the trial court, and Jones then appealed the trial court's grant of that motion. *Id.* at 1065 (¶ 5). While the appeal was pending, Jones filed a second, Chapter 13, bankruptcy. *Id.* at 1066 (¶ 6). Again, he failed to disclose his lawsuit against the Board of Trustees. *Id.* The Mississippi Court of Appeals reversed the trial court's grant of the Board's motion for a judgment notwithstanding the verdict. *Id.* at 1066 (¶ 7). Jones modified his bankruptcy plan, and the bankruptcy court accepted his modified plan. *Id.* Jones had yet to disclose his lawsuit to the bankruptcy court. *Id.*

¶59. After remand of the case to the trial court, the Board of Trustees again moved for summary judgment, claiming that Jones was judicially estopped by his failure to disclose his claim against the Board to the Florida bankruptcy court. *Id.* at 1066 (¶ 8). Within ten days of the filing of the Board's motion for summary judgment, Jones finally amended his bankruptcy plan to disclose the lawsuit. *Id.* The trial court found that judicial estoppel applied and granted the Board's motion for summary judgment. *Id.* at 1066 (¶ 9).

¶60. In *Jones*, like today's case, in the end the debtor received no benefit from his attempt to conceal his claim from the bankruptcy court because the claim was eventually disclosed, and the bankruptcy court ordered him to pay any proceeds to the bankruptcy trustee. *Id.* at

23

1068 (¶ 17). In other words, Jones ended up right where he would have been had he disclosed the claim originally. Nevertheless, unlike today, the *Jones* majority held that the element of judicial acceptance was met, and the doctrine of judicial estoppel barred Jones's claim. *Id.* at 1070 (¶ 22).

¶61. *Adams v. Graceland Care Ctr.*, 208 So. 3d 575 (Miss. 2017), discussed favorably by the *Jones* Court, *Jones*, 337 So. 3d at 1070-71 (¶¶ 27-33), provides another example. There, the plaintiff, Shirley Adams, sued her mother's nursing home, Graceland Care Center, for injuries allegedly sustained by her mother while in the care of Graceland. *Adams*, 208 So. 3d at 577 (¶ 1). Graceland moved for summary judgment on the grounds of judicial estoppel, and the trial judge granted Graceland's motion. *Id.*

¶62. In *Adams*, Graceland's attorney discovered during the deposition of Adams that she had filed for Chapter 13 bankruptcy five years earlier. *Id.* at 577-78 (¶ 3). However, despite filing her lawsuit against Graceland a year before her bankruptcy discharge, Adams never reported the lawsuit to the bankruptcy court. *Id.* at 578 (¶ 3). Graceland filed its motion for summary judgment based on the doctrine of judicial estoppel, and Adams filed to reopen her bankruptcy. *Id.* at 578 (¶ 4). The bankruptcy was reopened, and Adams amended her schedules. *Id.* Like *Jones* and like today's case, Adams ended up where she would have been had she initially disclosed the claim.

¶63. Also like the *Jones* Court, the *Adams* Court held that the doctrine of judicial estoppel applied to bar Adams's claims. *Adams*, 208 So. 3d at 582 (¶ 21). Regarding the judicial acceptance element, the *Adams* Court wrote:

24

> [T]he bankruptcy court accepting the original bankruptcy schedules and then discharging Adams under the original schedules without the lawsuit listed satisfies the second element of judicial estoppel that a court accepted Adams's previous position. Additionally, Adams's attempt to amend her bankruptcy schedules after Graceland filed the motion for summary judgment does not cure the fact that the bankruptcy court relied on her position. "Allowing the debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *Love v. Tyson Foods Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (citation omitted).

*Adams*, 208 So. 3d at 580-81 (¶ 16).

¶64. In the instant case, the bankruptcy court approved Strong's Amended Chapter 13 plan on May 14, 2019. Strong hired an attorney to represent him in his personal injury claim no later than April 25, 2019, and he testified at the Chapter 13 creditors meeting on February 26, 2019, that he had no pending claims other than his workers' compensation claim. Based on his representations, both in testimony and in his written bankruptcy schedules, on May 18, 2019, the bankruptcy court approved the favorable-to-Strong 0 percent plan. Here is found the benefit to Strong, even if temporary, and judicial reliance. That the bankruptcy court's reliance was later canceled out due to the dismissal of the bankruptcy—that resulted from Strong's failure to make his payments under the plan—should have no more effect on the application of judicial estoppel than the efforts of Jones and Adams to amend their bankruptcy paperwork after they were caught. In today's holding, the majority rewards Strong for two wrongs, failing to disclose his claim to the bankruptcy court and failing to abide by his Chapter 13 plan.

**V. Majority's Determination that Trial Court Erred as a Matter of Law**

25

¶65. To justify applying a *de novo* standard of review, the majority writes that the trial court erred as matter of law by not applying Fifth Circuit precedent to its treatment of the doctrine of judicial estoppel. As a preliminary matter, as shown above the application of the doctrine of judicial estoppel in Mississippi courts is a question of Mississippi law—not federal law. Federal courts, of course, have the final say as to bankruptcy law, but once they have their final say, Mississippi courts are not bound in how they apply federal bankruptcy law to the state-law question of judicial estoppel. To write that the trial judge erred by not applying Fifth Circuit precedent to the doctrine of judicial estoppel is a jurisprudential nonsequitur.

¶66. In any event, the majority writes that the trial judge erred as a matter of law by not acknowledging the *Oparaji dicta* that the element of judicial acceptance is not met when what had been judicial acceptance is canceled out by the later dismissal without discharge of the bankruptcy. The *Oparaji* result, to the extent that it holds that the dismissal of a bankruptcy without discharge operates as a revocation of the earlier judicial acceptance, is a pronouncement of a judicial-estoppel principle, not a rule of bankruptcy law. As such, it is not binding on Mississippi's state courts applying Mississippi law. It contradicts standing Mississippi precedent as found in *Jones* and *Adams* to the effect that judicial estoppel will still apply even when the plaintiff's concealment of a claim does not affect the outcome of a bankruptcy, and, therefore, is not persuasive either.

¶67. For the foregoing reasons, the trial judge did not err as a matter of law (or otherwise).

**CONCLUSION**

26

¶68. In its *Oparaji* *dicta*, the Fifth Circuit adopted, or would have adopted had it not been *dicta*, a no-harm-no-foul approach to the judicial acceptance element, albeit in a wholly different context than today's case. As can be seen from both *Jones* and *Adams*, Mississippi courts have repeatedly rejected a no-harm-no-foul approach in Mississippi's law on the doctrine of judicial estoppel. It is our job, not the Fifth Circuit's, to ensure that the purpose of judicial estoppel in protecting the integrity of the judicial process in Mississippi is fulfilled.

¶69. With today's holding, the majority fails to protect that integrity by opening the door for litigants in Mississippi's courts to try to conceal claims from their bankruptcy estates in hopes that they do not get discovered, then escape any consequences for their attempt as long as that attempt does not, in the end, affect their bankruptcy proceedings. Contrary to the claim that today's case presents an issue of first impression, we have held, repeatedly, that litigants may not call our judicial processes into question by doing so.

¶70. The trial court committed no error of law or of fact, and I would reverse the decision of the Court of Appeals and would reinstate and affirm the trial court's grant of summary judgment.

**BRANNING, J., JOINS THIS OPINION.**